**Shannon Renee RIVERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00370–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 16, 1989.

Jack B. Zimmerman, Jim E. Lavine, Zimmerman & Lavine, Houston, for appellant.

John B. Holmes, Dist. Atty., Winston E. Cochran, and Roger Haseman, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, MIRABAL and WARREN, JJ.

OPINION ON REHEARING

WARREN, Justice.

Appellant's motion for rehearing is denied, however, we withdraw our opinion of February 16, 1989, and substitute the following.

A jury found appellant guilty of murder and assessed punishment at 15 years confinement.

Appellant brings three points of error complaining that: (1) the Juvenile Court and the Criminal District Courts never acquired jurisdiction because the proceedings were prosecuted by the district attorney, who was without authority to do so; (2) the Juvenile Court erred in denying the appellant her right to confrontation at the transfer hearing; and (3) the evidence at trial is insufficient to support the conviction because it fails to corroborate the testimony of the accomplice witnesses.

On September 11, 1985, appellant was taken into custody based on a juvenile complaint filed by an assistant district attorney on September 10, 1985. A petition for discretionary transfer to criminal district court, signed by an assistant district attorney, was filed on September 17, 1985. On January 10, 1986, an amended petition and motion to waive jurisdiction were filed. After a hearing at which the State of Texas was represented by an assistant district attorney, the Judge of the 313th District Court, sitting as a juvenile court, signed an order on February 20, 1986, waiving jurisdiction and transferring the appellant to criminal district court for prosecution. That order was not appealed, nor was testimony taken on a bill of exceptions.

■ Appellant's first point of error complains that the Juvenile and Criminal District Courts did not have jurisdiction because the district attorney is without authority to prosecute juvenile certification proceedings. Her argument is based on our decision in *Holmes v. Eckels*, 731 S.W. 2d 101 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

We have previously decided this issue and have held that the district attorney has general authority to prosecute juvenile certification cases under Family Code sections 51.02(7) and 53.04, and additionally, he has specific grants of authority provided for in the local provision in Government Code section 43.180. *Roberts v. Lowry*, 742 S.W.2d 747 (Tex.App.—Houston [1st Dist.] 1987, no writ). Although appellant acknowledges our holding in *Roberts*, she argues that our statutory construction does injustice in this case and that the more specific grant to the Harris County District Attorney contained in Government Code sec. 43.-180(b) (Vernon 1962), giving only limited authority to prosecute criminal cases and any case heard on writ of habeas corpus, should prevail.

Pursuant to the rule of construction of general and local statutory provisions contained in Tex.Gov't Code Ann. sec. 311.026, we find that the juvenile and criminal district courts properly exercised jurisdiction. *Roberts v. Lowry*, 742 S.W.2d at 749.

Appellant's first point of error is overruled.

■ In her second point of error, appellant complains that the trial court erred in denying appellant her right to confrontation at the transfer hearing, and such denial prevented the criminal district court from acquiring jurisdiction. Any complaint appellant had concerning the validity of the transfer order should have been appealed as a civil matter as provided in Tex.Family Code 56.01(c)(1). *Ex parte Calvin*, 689 S.W.2d 460 (Tex.Crim.App.1985).

Though the Court of Criminal Appeals has jurisdiction to review an allegation of a jurisdictional defect in juvenile proceedings, *Hardesty v. State*, 659 S.W.2d 823 (Tex.Crim.App.1983), we do not consider appellant's complaint of the judge's improper limitation of cross-examination to be error of the kind that would deprive the district court of jurisdiction.

Appellant's second point of error is overruled.

In her third point of error, appellant complains that the evidence is insufficient to support the conviction because it fails to corroborate accomplice testimony.

Martin Wayne Tosh was an accomplice witness as a matter of law. He was 18 at the time of trial and 16 at the time of the offense. He testified pursuant to a plea bargain with the State that upon his plea of guilty to murder, he would receive a sentence of 20 years incarceration. He testified that appellant and he became involved and that she moved in with him about one month before the offense. They shared the apartment with three men, Harold

Smith (Jack), Mike Trimmer (Eddie), and Mike Cravey, and one woman, Bridgette Stowe. During that time everyone was using drugs on a daily basis. Tosh met the deceased, Dennis Keith Medler, in early July 1985, and lived with him for about one week. During that time, the deceased made his living selling marijuana.

Approximately three weeks prior to the offense, discussions were held with Tosh, Smith, Trimmer, Cravey, Stowe, and appellant present, concerning killing the deceased. Appellant was not present at all of these discussions. Tosh testified that everyone was in agreement about the murder of the deceased. The plan was for a slow death, including acts of torture. The morning of the killing, appellant and Stowe told Tosh that Cravey would lure Medler to the apartment that night by telling him that the group was going to gather mushrooms in a field. They would then kill Medler.

Tosh testified that sometime around or after midnight on the night of August 5, 1985, he, Smith, Trimmer, Cravey, appellant, and the deceased went to the field. Although Stowe was supposed to go, she did not. Tosh testified that he did not believe they would really kill Medler. Tosh testified that the following occurred when they reached the dark field: everybody was looking around for mushrooms; Cravey struck Medler from behind with a pipe; Tosh and Trimmer grabbed his arms and Smith tied his feet with a rope; Trimmer kicked Medler, beat him with his fist and hit him with a pipe several times; Trimmer told Medler they were going to kill him; Medler begged his assailants not to kill him and asked that he be knocked out if they did kill him; Medler was beaten repeatedly by Trimmer with a pipe to try and knock him out; Smith turned Medler onto his stomach, put a bandana around his neck, and placed the pipe through the bandana, and started turning it; Smith turned the pipe five or six times; Smith asked appellant to turn the pipe, which she did two or three times, letting go when Tosh said that

"his head's going to come off"; Tosh then turned it until his hand slid off because of the blood on it; and Smith turned the pipe until the bandana broke; Smith grabbed the rope around Medler's feet and flipped him over; Trimmer tried to cut the deceased's throat, then stabbed him several times in the chest; the appellant then lit a cigarette lighter and bent down to burn the hair of the deceased, but recoiled and dropped the lighter when she saw his blood streaked face. Someone recovered the lighter and gave it back to the appellant. She turned her head away and tried again, but the hair did not catch fire because it was wet with blood. At that point, someone suggested that Medler could be identified by his teeth, so Trimmer hit Medler in the face with the pipe in an effort to knock out his teeth. In fact some teeth were dislodged, and the medical examiner's opinion was that teeth lodged in Medler's trachea, aspirated along with blood, were the proximate cause of Medler's death. Tosh and Smith grabbed the rope tied around the deceased's feet and dragged him 20 to 30 yards away and tried to cover the body with some limbs. Cravey tried to burn his fingerprints off. When they left, Medler was still breathing and lying on his back.

On the way back, Trimmer or Smith threw the pipe away. Tosh testified that everybody returned to the apartment and ran upstairs to wash off the blood. Tosh identified SX [1] # 20 as being a pair of tennis shoes that he thought the appellant had borrowed from Stowe before they left to go to the field, and that they had blood on them.

Tosh was impeached by a prior sworn statement that he had given to Judge Harmon of the 178th District Court one month after the offense. In his original sworn statement given to Judge Harmon, Tosh stated that the appellant was present and only watching during the murder and that the only reason she went along was because Tosh did not believe anything would happen. He further swore that Trimmer,

---

1. State's Exhibits contained in the record will be referred to as "SX" and Defendant's Exhibits as "DX."

and not appellant, told him they were going to kill Medler that night. He claimed that he was high when arrested and when he gave the statement, although he swore in the statement that he was not.

Another accomplice, Bridgette Stowe, testified at the trial. Stowe, who joined in the planning but not in the murder, indicated that the appellant participated in the planning of Medler's murder. She specifically said the appellant "agreed with" the decision to inflict a slow painful death and that appellant agreed when Smith said he wanted to "watch somebody die." On the night of the murder, Stowe attempted to do some crystal, but became ill. She went upstairs to lie down and testified that two of the men tried to wake her to go with them, but she did not get up. Appellant came to her and asked if she were coming along and again, Stowe declined. Appellant told Stowe that she was going. When she came downstairs later, Michelle Marto and two other people were there. Stowe testified that sometime later everyone except Medler returned and ran upstairs. Some of their clothes were bloodstained. Stowe stated that appellant had borrowed her tennis shoes, which had blood on them when appellant returned them. She identified SX # 20 as her tennis shoes. Stowe recalled a conversation in which she asked appellant if she had burned Medler's hair and appellant said that she had. Stowe also testified that appellant was threatened not to tell anybody or she would be killed.

■ Appellant challenges the sufficiency of the corroborative evidence to support her conviction. Recently, the Texas Court of Criminal Appeals set out the test to be used in such challenges. Citing *Edwards v. State*, 427 S.W.2d 629 (Tex.Crim.App.1968), the court stated:

> The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain *if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the of-*

> *fense.* If there is such evidence, the corroboration is sufficient; otherwise, it is not.

*Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim.App.1988).

The court in *Reed*, specifically overruled all cases that had utilized the "more likely than not" test and adopted the proper test as set forth in article 38.14, Tex.Code Crim. P.Ann. (Vernon 1979). Article 38.14 provides that a conviction cannot stand upon testimony of the accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

In applying the test for the sufficiency of the corroboration, each case must be considered on its own facts and circumstances. *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim.App.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). In *Reed*, the Court of Criminal Appeals reviewed prior case law and set out the following standards for review:

> All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary. The corroborative evidence may be circumstantial or direct. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. Insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of accomplice witness testimony.... Otherwise the testimony of the accomplice would be valueless.

*Reed v. State*, 744 S.W.2d at 126 (citations omitted).

The corroborating evidence came from the testimony of Michelle Marto and Michelle Diguid. Appellant told Marto, during a conversation in the detention center, that she had choked Medler with a bandana and had tried to burn his hair. Diguid,

another detainee in the Juvenile Detention Center, testified that appellant told her that she had wrapped a bandana around his neck and had taken a twig and was twisting it. Diguid testified that appellant told her a pipe was used to beat the victim, that appellant's boyfriend was involved, and that she burned the victim's hair with a lighter.

Dr. Aurelio Espinola, the Deputy Chief Medical Examiner for Harris County, testified that he performed an autopsy on the body of Medler. The body was in a state of decomposition consistent with eight or more days' exposure. Asphyxia due to aspiration of blood and teeth was the only cause of death. Dr. Espinola testified that he found no evidence of burned hair, but would not expect to if the hair was wet. He further testified that if a bandana such as that demonstrated by the State were twisted around the deceased's neck to the point of breaking as suggested by the State, it would leave a ligature mark, plus it would produce hemorrhaging of the underlying tissue. He found no evidence of that though he would expect to find some if that actually happened. He ruled out, to a reasonable medical certainty, that a pipe and a bandana, similar to the State's demonstrative evidence, were used to make a tourniquet around the deceased's neck and twisted to the point where the bandana broke.

Appellant was convicted on the law of parties, as the conduct attributed to her did not directly cause the death of Medler. Her guilt depended on the law of parties, as provide by the Texas Penal Code Ann. section 7.02(a) (Vernon 1974):

A person is criminally responsible for an offense committed by the conduct of another if:

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense....

We must decide if the corroborative evidence was sufficient to support this conviction. Marto and Diguid both testified that appellant told them she was in the detention center for murder, that she participated in the crime by going to the crime scene with the others, by choking the deceased with a bandana and by burning, or attempting to burn, his hair. Both witnesses corroborate the testimony of Tosh concerning the participation of appellant in the murder. This testimony is sufficient to support the finding by the jury that her actions established the intent to assist or promote the commission of the murder.

The fact that appellant's acts did not proximately cause the deceased's death does not absolve her of culpability. Her acts were in consent with the co-defendants, all of whom had a common purpose: to cause deceased's death.

Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.