**Alejo Roberto GONZALEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0167–CR.**

Court of Appeals of Texas,
Amarillo.

Jan. 24, 1996.

Rehearing Overruled Feb. 21, 1996.

Jeffrey B. Keck, Dallas, for appellant.

John Vance, District Attorney, Libra Lange, Assistant District Attorney, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

This case arises from an action of the Dallas County Grand Jury indicting appellant for the state jail felony offense of delivery of cocaine in an amount of less than one gram. *See* Tex.Health & Safety Code Ann. § 481.112 (Vernon Supp.1995). The indictment also contained two enhancement paragraphs, each alleging a prior felony conviction. When his motion to quash the enhancement paragraphs was denied, appellant Alejo Roberto Gonzalez pled guilty to the indictment and true to the two enhancement paragraphs. Applying the enhancement provision of former Texas Penal Code section 12.42(d),[1] the trial court assessed his punishment at 25 years confinement in the Institutional Division of the Texas Department of Criminal Justice. In one point of error, appellant argues that state jail felonies may not be enhanced under the habitual offender provision of section 12.42(d) of the Texas Penal Code (the Code) and can only be enhanced pursuant to sections 12.35(c) and 12.42(a) of the Code, and the trial court erred in failing to apply those sections in assessing his sentence. Agreeing, we sustain appellant's point of error, reverse the punishment portion of the trial court's judgment, and remand the cause for further proceedings in accordance with this opinion.

The gist of appellant's argument is that to apply the enhancement provisions of section 12.42(d) of the Code creates a conflict with the requirement of former article 42.12, sec-

1. At the time of appellant's offense and conviction, that section provided:

If it is shown on the trial of a felony offense that the defendant had previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. Tex.Penal Code § 12.42 (amended by Act of June 7, 1995, 74th Leg., R.S., ch. 318, Tex.Gen.Laws 2734, 2735). Unless otherwise specified, references to section 12.42 will be to the statute as it existed at the time of the offense.

tion 15(a) of the Texas Code of Criminal Procedure (CCP). That article provided:

On conviction of a state jail felony, the judge shall suspend the imposition of the sentence of confinement and place the defendant on community supervision. The judge may suspend in whole or in part the imposition of any fine imposed on conviction.

Tex.Code Crim.Proc.Ann. art. 42.12, § 15(a) (amended by Act of June 7, 1995, 74th Leg., R.S., ch. 318, 1995 Tex.Gen.Laws 2734, 2754).

The State, primarily relying upon *State v. Thompson*, No. 14–94–01191–CR (Tex.App.—Houston [14th Dist.] Aug. 17, 1995),[2] argues the habitual offender enhancement set out in section 12.42(d) of the Code is not only applicable to state jail felonies, it acts to take the defendant out of the state jail felony program, thus making article 42.12 inapplicable. Because resolution of this question requires the interpretation of statutes, we initially review the standards applicable to such interpretations.

The seminal case on construction of criminal statutes in this state is *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991). We must also be guided by the applicable provisions of the Code Construction Act, Tex. Gov't.Code Ann. §§ 311.001–.031 (Vernon 1988 & Pamph.1995) (the Act). The *Boykin* court enunciated the longstanding principle that the overriding principle in interpreting statutes is to give effect to the collective intent of the Legislature. *Boykin*, 818 S.W.2d at 785. In explaining the primacy of the statute's text, the court explicated:

When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We do this because the text of the statute *is the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is the only *definitive* evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. Yet a third reason for focussing on the literal text is that the Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted.

Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text,[3] should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.

*Boykin*, 818 S.W.2d at 785 (emphasis and footnote in original). Thus, although section 311.023 of the Act permits courts to consider several factors including the object sought to be attained and the statute's legislative history, the Court of Criminal Appeals has suggested that doing so to construe an unambiguous statute would violate our State Constitution.[4]

In its explication, the *Boykin* court recognized only one narrow exception to its general rule, *i.e.*, "where application of the statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally." *Id.*

**2.** This opinion was subsequently withdrawn and a corrected opinion substituted on October 26, 1995, which has not yet appeared in the South Western Reporter. As the substituted opinion applies the same reasoning as the original opinion, we will treat the State's citations as references to the subsequent opinion. [Editor's Note: The October 26, 1995 opinion now appears at 912 S.W.2d 244.]

**3.** *See, e.g.*, 82 C.J.S. *Statutes* §§ 329–348 (1953). It should be remembered that the canons of construction are no more than rules of logic for the interpretation of texts.

**4.** It appears that the Supreme Court may take a more liberal view of Section 311.023 of the Act. *See Sonnier v. Chisholm–Ryder Co., Inc.*, 909 S.W.2d 475 (Tex.1995); *Univ. of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 n. 3 (Tex. 1994).

The Act also provides guidance in resolving apparent conflicts between statutes. Tex.Gov't Code Ann. § 311.025–.026 (Vernon 1988 & Pamph.1995). Several cases have characterized section 311.026 of the Act as a codification of the doctrine of *pari materia.* See, e.g., *State v. Thompson.* In *Cheney v. State,* 755 S.W.2d 123 (Tex.Crim.App.1988), the court explained that doctrine. Quoting from 53 Tex.Jur.2d, *Statutes,* § 186, the court wrote:

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being in *pari materia* though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

>     *    *    *    *    *    *

The purpose of the in *pari materia* rule of construction is to carry out the full legislative intent, by giving effect to all laws and provisions bearing on the same subject. The rule proceeds on the same supposition that several statutes relating to one subject are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions. Thus, it applies where one statute deals with a subject in comprehensive terms and another deals with a portion of the same subject in a more definite way. But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling. *And, the rule is not applicable to enactments that cover different situations and that were apparently not intended to be considered together.* (Emphasis added.)

*Cheney,* 755 S.W.2d at 126.

In *State v. Mancuso,* 903 S.W.2d 386 (Tex. App.—Houston [1st Dist.] 1995, pet. granted), the court held the habitual offender provision of the Code was in conflict with article 42.12 § 15(d) of the CCP. In considering the conflict, the court decided that section 311.026 of the Act was applicable and required that the more specific provision in the CCP prevail. *Mancuso,* 903 S.W.2d at 388. In *State v. Warner,* No. 01–95–00753–CR, —— S.W.2d —— (Tex.App.—Houston [1st Dist.] November 22, 1995, no pet. h), the court extended its analysis to an examination of each of the factors listed in section 311.023 of the Act and, ultimately, decided that the legislative intent was that state jail felons not be subject to the habitual offender provisions of section 12.42(d) of the Code. Parenthetically, in neither opinion did the court discuss the implications of the *pari materia* doctrine.

In the *Thompson* case, the Fourteenth Court of Appeals held to the contrary. It concluded that section 12.42(d) of the Code, read in conjunction with section 12.42(e) of the Code, applied only to those persons who have been finally convicted of two prior non-state jail felonies in instances when the second offense was committed subsequent to the first offense becoming final. On the other hand, it posited, CCP article 42.12, section 15(d) applies regardless of when, or if, the sentence for the previous felonies became final and regardless of whether the sentence was actually imposed, was probated, or was for a previous state jail or non-state jail felony. En route to its decision, the court considered the *pari materia* doctrine but found it inapplicable.

We do not believe a determination that the two statutes are in *pari materia* is necessary before the instruction of section 311.026 of the Act becomes applicable.[5] Significantly,

---

5. The *pari materia* doctrine is typically raised by a defendant who asserts he was convicted for the wrong offense. *See Cheney v. State,* 755 S.W.2d 123 (Tex.Crim.App.1988); *Alejos v. State,* 555 S.W.2d 444 (Tex.Crim.App.1977); *Ex parte Harrell,* 542 S.W.2d 169 (Tex.Crim.App.1976); *Milligan v. State,* 859 S.W.2d 117, 119 (Tex.App.—Eastland 1993, pet. ref'd); *Ex parte Smith,* 849 S.W.2d 832, 833 (Tex.App.—Amarillo 1992, no pet.); *Taylor v. State,* 805 S.W.2d 609, 610 (Tex. App.—Texarkana 1991, no pet.).

no such requirement is contained within the section. *But see, McMillan v. State,* 696 S.W.2d 584, 586 (Tex.App.—Dallas 1984, no pet.). Moreover, in *Cheney,* 755 S.W.2d at 127, the court explicated that "when two statutes that are not in *pari materia* are at issue, other rules of statutory construction will then dictate which statute controls." *Id.* The "other rules" applicable are those set out in the Act.

Indeed, several cases have applied section 311.026, or its progenitor Tex.Rev.Civ.Stat. Ann. art. 5429b–2, section 3.06 [6] without an initial determination that the statutes were in *pari materia. See State ex rel. Sutton v. Bage,* 822 S.W.2d 55, 59 (Tex.Crim.App.1992) (Baird, joined by McCormick dissenting); *Griffin v. State,* 765 S.W.2d 422, 426 (Tex. Crim.App.1989); *Chalin v. State,* 645 S.W.2d 265, 272 (Tex.Crim.App.1982); *Christopher v. State,* 639 S.W.2d 932, 934 (Tex.Crim.App. 1982); *Ex parte Norvell,* 528 S.W.2d 129, 131 (Tex.Crim.App.1975); *Mayo v. State,* 877 S.W.2d 385, 389 (Tex.App.—Houston [1st Dist.] 1994, no pet.); *Rivera v. State,* 768 S.W.2d 399, 400 (Tex.App.—Houston [1st Dist.] 1989, no pet.); *Fogle v. State,* 667 S.W.2d 296, 297 (Tex.App.—Dallas 1984, no pet.).

Consequently, our first task is to determine if section 12.42(d) of the Code and article 42.12, § 15 of the CCP can be reconciled without doing violence to their terms. The State asserts that the two are not in conflict because section 12.42(d) removes a defendant from the state jail system, thereby making article 42.12, § 15 inapplicable. We do not agree.

Parenthetically, the *Thompson* court reached the same conclusion as that urged by the State. In that case, the court concluded:

> We find that article 42.12 sec. 15 applies only to convicted state jail felons whose sentence has been assessed within the punishment range specified in Sec. 12.35(a). If the State has indicted and proven that a

defendant is a habitual offender as defined in Sec. 12.42(d), punishment must be assessed in accordance with that statute. Because the minimum sentence for someone [whose punishment is] enhanced pursuant to Sec. 12.42(d) is twenty-five years, even where the primary offense is a state jail felony, art. 42.12 sec. 15(a) does not apply.

However, the opinion contains no additional reasoning to support the conclusion made in the first sentence. Examination of the language of article 42.12, § 15(a) does not support this conclusion. The statute provides: "On conviction of a state jail felony, the judge shall...." By its terms, then, the statute is applicable to those convicted of state jail felonies. Nothing in the text of the statute suggests that its application is limited to state jail felons whose punishment was assessed under section 12.35(a) of the Code. Section 12.42 of the Code acts to enhance punishment and does not purport to alter the classification of a defendant's conviction to something other than a state jail felony. We do not believe a court can, by judicial edict, insert a limitation omitted by the Legislature.

In its brief, the State suggests the same result arrived at by the *Thompson* court based upon the "punishment ladder" it sees in the relevant statutes. While the progression of punishment suggested by the State is a rational attempt to synthesize the statutes concerning state jail felonies, it fails to give effect to the plain language of article 42.12, § 15 and thereby suffers the same flaw as the reasoning applied by the *Thompson* court.

Moreover, we believe, acceptance of the result argued by the State and applied in *Thompson* would create disparate punishment based upon minor or even chance events. For example, the *Thompson* court noted section 12.42 would only apply when the defendant had two prior felony convictions with the second offense occurring after

---

**6.** That statute was virtually identical to present section 311.026. It provided:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given both. If the conflict between the provision is irreconcil-

able, the special or local provision prevails as an exception to a general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

the first conviction became final, while article 42.12, § 15(d) applies regardless of the finality or timing of the prior felony convictions. Thus, a defendant convicted of a state jail felony with two prior non-state jail felonies committed in rapid succession would face a maximum of one year confinement, while one committing the same offense at slightly greater intervals [7] would be subject to a minimum punishment of 25 years imprisonment.

Additionally, we have not been able to find a sufficiently rational basis upon which to conclude one of the statutes is more specific than the other. For example, while article 42.12, § 15 is more specific in that it only concerns state jail felonies and section 12.42(d) is applicable to enhance any felony, article 42.12, § 15(d) concerning the effect of *any* prior felony convictions of state jail felons is less specific than section 12.42(d), which is only applicable if the prior felony convictions are final and sequential.

Thus, we agree with the First Court of Appeals, that proper determination of the Legislature's intent requires consideration of evidence beyond the words of the statutes themselves. *See Boykin*, 818 S.W.2d at 785–86. Without adopting every part of the section 311.023 analysis conducted by the First Court of Appeals in the *Warner* case, we find the court's discussion of the legislative history of Senate Bill 1067 creating state jail felonies very persuasive.

In addition to the cogent observations of the *Warner* court, and in addition to the bill analysis of the Texas Punishment Standards Commission cited by that court, the Senate Research Center prepared a bill analysis [8] of Senate Bill 1067. This report, dated April 14, 1993, begins with the following introduction:

> This legislation rewrites the Texas Penal Code and includes identification of offenses in a new classification of "state jail felony". The new classification is intended to identify the lowest level felony offenders for a new punishment system, while reserving

the most expensive punishment resource—state prison beds—for increased incarceration of the most dangerous felons.

> This legislation also attempts to ensure *more meaningful punishment for the state jail felons, by keeping them within the probation/community corrections net,* under judicial control. The concept of sentencing to community corrections gives the district judge more control over the offender. (emphasis added).

This analysis supports the view that the intent was to keep all state jail felons within the probation system.

We must also note the subsequent changes to section 12.42(d) and article 42.12, § 15 made by the passage of the 74th Legislature of Senate Bill 15, sponsored by Senator Whitmire. Act of June 7, 1995, 74th Leg., R.S., ch. 318, 1995 Tex.Gen.Laws 2734, 2754. Section one of that Act expressly precluded application of the habitual felony offender provisions of section 12.42(d) to state jail felons punishable under section 12.35(a). Section 60 of the Act also altered article 42.12, § 15 to limit mandatory suspension of sentences to defendants punished under section 12.35(a) of the Code who had no previous felony convictions. Suspension of sentence for defendants with a previous felony conviction are now at the discretion of the judge. Tex.Code Crim.Proc. art. 42.12, § 15(a) (Vernon Supp.1995).

While the subsequent changes to these statutes may not be of direct significance, the reasons for those changes offers some additional insight into the intent of the Legislature. The bill analysis of Senate Bill 15 [9] states:

> The new state jail system and sentencing structure became effective on September 1, 1994. Since that time, practitioners have identified some problems with the system's implementation. Similarly, the rewrite of the Penal Code was such a massive effort that a number of *inadver-*

---

7. Or in an area where the convictions became final more quickly.

8. The Court of Criminal Appeals has commented that they "have long honored, as binding evidence of legislative intent, bill analyses and study

group reports and legislative council reports and floor debate." *Dillehey v. State,* 815 S.W.2d 623, 625 (Tex.Crim.App.1991).

9. This bill analysis is entitled "Committee Report (Substituted)" and is dated May 10, 1995.

*tent mistakes* were made in the drafting and need to be fixed. (emphasis added).

Consideration of these changes and the comments in the analysis adds additional force to the conclusion that the interpretation urged by the State and adopted by the Fourteenth Court of Appeals would not fully carry out the legislative intent in enacting Senate Bill 1067.

For the reasons we have enumerated above, we are of the opinion that applying section 12.42(d) of the Code to the punishing of state jail felons with prior, non-state jail felony convictions would be contrary to the intent of the Legislature. Accordingly, we sustain appellant's point of error, reverse the judgment of the trial court and remand this cause to that court for a new punishment hearing.