Barbara Ann **GRIFFIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 955–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 8, 1989.

---

John H. Read, Danny D. Burns, Grand Prairie, for appellant.

Henry Wade, Former Dist. Atty., John Vance, Dist. Atty., and Mary Jo Kain, Steven H. Miller, Marcus Busch and Pamela Sullivan Berdanier, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant, a sixteen year old juvenile at the time of the offense, was convicted as a party to murder. Her punishment was assessed by the jury at fifteen years in the Texas Department of Corrections. The Dallas Court of Appeals reversed her conviction, holding that her written confession had been involuntary, and hence its admission into evidence violated the Due Process Clause of the United States Constitution. *B.A.G. v. State,* 715 S.W.2d 790 (Tex.App.—Dallas 1986).

The court of appeals reasoned that because an oral statement appellant gave to police upon her arrest was not obtained in accordance with the dictates of V.T.C.A., Family Code § 51.09(b), a subsequent written statement, though taken in compliance with that same provision, was nevertheless rendered involuntary in that appellant was unaware her earlier oral statement could not be used as evidence against her. In short, the court of appeals reversed on the basis of the "cat-out-of-the-bag" theory of involuntariness, first articulated (but rejected there) by Justice Jackson in *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

In its petition for discretionary review the State now contends 1) that because the juvenile court waived its jurisdiction over

appellant and transferred her to criminal district court to be tried as an adult, the court of appeals erred in incorporating provisions of the Family Code into its analysis of the voluntariness of appellant's written confession; and 2) that, inasmuch as appellant never established at the *Jackson v. Denno* hearing[1] that, but for her belief that her earlier oral statement could be used in evidence against her, she never would have given the subsequent written confession, the State had no burden to produce evidence of admissibility of the oral statement. We granted the State's petition to address these contentions. Tex.R.App. Pro, Rule 200(c)(2).

### I.

Gerald Spencer was found strangled in his home in Dallas on June 29, 1983. He had been dead for several days. From trial and from the *Jackson v. Denno* hearing, which was held midtrial, the following facts emerged uncontested. On the afternoon of July 13, 1983, acting on an anonymous tip, Homicide Investigators King and Watts proceeded to the home of Velma Langston, appellant's aunt. Langston consented to a search of her home, wherein investigators found a set of glassware that had been taken from the home of the deceased. Langston and appellant agreed to accompany the investigators to the police station to commit their explanation as to how they had come to possess the glassware to affidavit form. Neither was under arrest at this point. At the station appellant gave her affidavit to King, at which time he

discovered she was a juvenile. Appellant consented to be fingerprinted while the affidavit was being typed. At approximately 4:00 p.m., King learned that Langston's fingerprints matched those found at the murder scene. He immediately placed appellant under arrest and read her *Miranda*[2] rights to her, warning her, *inter alia*, "that any statement you make, may and probably will be used in evidence against you at your trial." Appellant then told King, "I was in the house, but I didn't kill him."

Over the next hour or so King and appellant "discussed" the murder. King testified:

"A Well, we discussed it, yes sir.

Q And she told you some facts about about it?

A She told me some things, yes sir.

Q In fact, she told you all of the facts that you later used to type up the voluntary statement?

A That's what she told me, yes sir.

Q And you had written all of that down while she was telling you this; is that correct?

A Yes, that's correct.[3]

\* \* \* \* \* \*

A She had told me briefly what she wanted to tell me at that time."

At approximately 5:30 p.m. appellant was taken before a magistrate who administered the warning § 51.09(b)(1), supra, requires as a predicate to admissibility of the written confession of a juvenile.[4] The

---

**1.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**2.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Thus there is some indication appellant's initial confession was taken down in writing in some form at this time. The court of appeals assumed it was an oral confession, presumably because it was not endorsed by appellant at that time, and determined the question of admissibility on the basis of that assumption.

**4.** § 51.09(b)(1), supra, mandates that before he gives a written statement a juvenile be admonished, in addition to the standard *Miranda* and Article 38.22, V.A.C.C.P., warnings, that:

"(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult; and

"(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met."

See generally, *Carter v. State*, 650 S.W.2d 793 (Tex.Cr.App.1983) (Clinton, J., concurring).

magistrate determined that appellant understood the warning. She was not informed of King's prior "discussion" with appellant.

Appellant then gave King a written statement implicating herself as a party to the murder. She was taken before a different magistrate at about 8:45 p.m., where, in the absence of any law enforcement personnel, she was once again instructed in accordance with § 51.09(b)(1), supra. The second magistrate advised appellant of the charges against her and the applicable range of punishment, and ascertained that she understood her rights and did not wish to have an attorney present. He reviewed appellant's statement with her in detail, and afterwards she signed it in his presence. Although he declared himself satisfied that appellant gave the written statement knowingly, intelligently and voluntarily, the second magistrate admitted he had not been told appellant was questioned prior to the first magistrate's warning. Thus, he was in no position to advise appellant as to the admissibility of her initial oral statement.

The court of appeals held that appellant's oral statement was inadmissible because it did not meet the requisites of V.T.C.A., Family Code § 51.02(b)(2), governing admissibility of oral statements taken from juveniles.[5] Finding support in two earlier decisions, *viz: In the Matter of L.R.S.*, 573 S.W.2d 888 (Tex.Civ.App.—Houston [1st] 1978, no writ), and *R.C.S. v. State*, 546 S.W.2d 939 (Tex.Civ.App.—San Antonio 1977, no writ), the court of appeals opined:

"[W]hen a magistrate is unaware of an earlier inadmissible statement made by a juvenile offender, his warnings have little value in restoring the juvenile's ability to resist the information-seeking process. If the magistrate knows about the previous oral statement and explains to the juvenile that it cannot be used

against him, such an explanation may be considered in determining whether a later confession is voluntary. In the absence of such an explanation, however, and under the circumstances shown here, we conclude that appellant had no opportunity to exercise a free and unconstrained will."

715 S.W.2d at 794. Because it found appellant's oral statement inadmissible as a matter of statutory, as opposed to federal constitutional law, the court of appeals expressly declined to hold that the subsequent written confession was in any sense "tainted" by the illegality infecting the oral confession. Instead the court of appeals held the second confession was itself involuntarily extracted, in violation of the Due Process Clause of the Federal Constitution, because appellant was never informed the oral statement could not be used against her, and thus she was "never free of the psychological and practical disadvantages of having [already] confessed." *United States v. Bayer*, 331 U.S. at 540, 67 S.Ct. at 1398, 91 L.Ed. at 1660. Although recognizing this socalled "cat-out-of-the-bag" theory of involuntariness of a confession is of "limited value" after this Court's relatively recent opinion in *Bell v. State*, 724 S.W.2d 780, 792–93 (Tex.Cr.App.1986), the court of appeals nevertheless deferred to what it perceived to be "a legislative determination" emanating from the Family Code, "that juvenile offenders be afforded consideration and protection not extended to adult offenders." 715 S.W.2d at 793. Thus, because she was a juvenile, the court of appeals found a violation of appellant's due process rights under circumstances that likely would not have rendered an adult's confession involuntary for purposes of the Due Process Clause.

## II.

We discern two purposes to which the court of appeals utilized provisions of the

---

5. Under this provision:

"(b) * * * the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

　　*　　*　　*　　*　　*　　*

(2) it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

Family Code. First, it specifically grounded its holding that appellant's oral confession was inadmissible in § 51.09(b)(2), supra.[6] Secondly, it found support for its conclusion that appellant's written confession was involuntary at least in part upon a general legislative attitude embodied in the Family Code that rights of a juvenile should be accorded greater solicitude than the same rights of an adult.[7] The State maintains the court of appeals erred in thus relying upon the provisions of the Family Code in its determination of the voluntariness of appellant's written confession. Although in a certain respect we agree with the State on this point, see n. 7, *ante,* we reject the specific argument made here.

The State relies principally upon *Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981), to contend that provisions of the Family Code do not apply once a juvenile is certified for trial as an adult offender. In *Swink* the juvenile defendant claimed he "could not validly waive his rights, and consent to a warrantless search" because the requisites of V.T.C.A., Family Code § 51.09(a), had not been met. Noting that the searches in issue had not been conducted by authority of the defendant's consent, and were therefore not predicated upon waiver of any of his rights, a panel of the Court continued:

"Moreover, the section upon which [the defendant] relies speaks only in terms of proceedings under Title 3 of the Family

Code. The complained of actions in this cause did not occur under that title." 617 S.W.2d at 211. The Court neither elaborated upon nor cited authority in support of this proposition.

In apparent conflict with this *ipse dixit* in *Swink,* supra, is the Court's earlier decision in *Lovell v. State,* 525 S.W.2d 511 (Tex.Cr.App.1975), which the court of appeals herein found dispositive. There a juvenile's written confession was obtained in violation of § 51.09, supra, as it read prior to amendment in 1975,[8] in that no attorney had been present when he waived his *Miranda* rights. Because presence of an attorney is not a prerequisite to waiver of these rights under Article 38.22, V.A.C.C.P., it became necessary for the Court to determine which provision would prevail in view of V.T.C.A., Family Code § 54.02(h), prescribing that upon transfer of a juvenile for criminal proceedings, he be dealt with as an adult in accordance with the Code of Criminal Procedure. Using principles of code construction now found in §§ 311.025 and 311.026 of the Government Code, the Court found § 51.09, supra, to prevail, both because it was enacted at a later point in time than Article 38.22, supra, and because it was found to be the more specific. Even though § 51.09, supra, (now § 51.09(a)), the same provision construed in *Swink,* supra, is facially applicable only to "proceedings under this title," the Court in *Lovell,* supra, found it operable in the context of the eventual criminal trial, rendering the juve-

---

**6.** We note, however, that had the court of appeals measured admissibility of appellant's oral confession against the standard of Article 38.22, § 4, V.A.C.C.P., its conclusion would likely have been the same, since § 51.09(b)(2), supra, "was added in 1975, apparently to make the oral statements of juveniles admissible on the same terms as the oral statements of adults[.]" *Dixon v. State,* 639 S.W.2d 9, 11 (Tex.App.—Dallas 1982), citing, *inter alia,* Dawson, Delinquent Children and Children in Need of Supervision, 8 Tex.Tech.L.Rev. 119, at 132 (1976).

**7.** It is true that state legislatures are free to promulgate a measure for protection of individual rights and liberties that exceeds the corresponding constitutional minimum. See, e.g., *Oregon v. Elstad,* 470 U.S. 298, 363 n. 44, 105 S.Ct. 1285, 1321, 84 L.Ed.2d 222, 267 (1985) (Brennan, J., dissenting). It would seem ano-

malous, however, to purport to derive a constitutional minimum from a perception of legislative intent, as the court of appeals appears to have done in this cause. That a "cat-out-of-the-bag" test for voluntariness of a juvenile's confession might be in keeping with the legislative bent does not mandate uncritical acceptance of that test for purposes of federal due process analysis.

**8.** See Acts 1975, 64th Leg., p. 2154, ch. 693, § 9, eff. Sept. 1, 1975. This amendment allowed for the waiver by a juvenile of his rights under *Miranda* out of the presence of an attorney, language of subsection (a) of § 51.09, supra, "[n]otwithstanding." See *Carter v. State,* supra, (Clinton, J., concurring); Waiver of Constitutional Rights by a Juvenile, 17 South Texas L.J. 301 (1976).

nile's confession inadmissible in that proceeding.[9]

Relying on *Lovell,* supra, for authority, the Court recently expounded:

"Until the moment transfer is ordered, the juvenile is cloaked with the trappings of a non-criminal proceeding with attendant safeguards such as greater protections in the areas of confession law and notice requirements.

* * * After transfer to the criminal system, the juvenile retains any more protective safeguards afforded him as a juvenile ... as well as other safeguards afforded him under the Code of Criminal Procedure."

*Vasquez v. State,* 739 S.W.2d 37, at 44 (Tex.Cr.App.1987). Thus, since *Swink,* supra, the Court has spoken in even broader terms than in *Lovell,* supra, indicating that issues involving substantive rights of pretransfer juveniles, such as legality of detention or a confession, though raised in the criminal forum, shall be controlled by applicable provisions of the Family Code.

■ Because appellant was a juvenile when she made it, the court of appeals did not err in measuring legality of her oral confession against § 51.09(b)(2), supra. Nor do we fault the court of appeals for invoking the greater protections afforded to juveniles by the Family Code in general, except inasmuch as it purported to rely upon the legislative attitude to define the parameters of federal due process analysis. See n. 7, *ante.* To the extent it conflicts with our opinion today, *Swink v. State,* supra, is overruled.[10]

### III.

The State complains of necromancy practiced against it in the court of appeals. According to the State, the "cat-out-of-the-bag" theory is "dead." At least in the absence of testimony from appellant "that her oral statement produced or caused her subsequent written confession[,]" the State contends, the court of appeals should not have conjured its spirit. Without such testimony, the State had no burden to prove the oral confession was admissible under § 51.09(b)(2), supra, in order to establish voluntariness of the written confession under the Due Process Clause.

We are not yet ready to declare the "cat-out-of-the-bag" theory, though of "limited value," *Bell v. State,* supra, cold in the grave. Nevertheless, because we believe the record supports the trial court's conclusion that, under the totality of the circumstances, appellant's written confession was voluntary, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

### A.

At least since its seminal decision in *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), the Supreme Court of the United States has held "that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton,* 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405, 410 (1985). The Court has characterized the inquiry as one of voluntariness; whether "under the totality of circumstances," *Fikes v. Alabama,* 352 U.S. 191, 197–98, 77 S.Ct. 281, 284–85, 1 L.Ed.2d 246, 251 (1957); *Haynes v. Washington,* 373 U.S. 503, 514, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513, 521

---

**9.** At the time his confession was taken Lovell was a juvenile. No attorney being present, his confession was therefore taken "in violation of [a] provision[ ] of the ... laws of the State of Texas[.]" Article 38.23, V.A.C.C.P. Upon his transfer for criminal proceedings, treating him as an adult in accordance with the V.T.C.A., Family Code § 54.02(h), supra, would surely mean that his confession, illegal when taken, could not be admitted against him in his criminal trial, consistent with Article 38.23, supra.

The Court in *Lovell,* supra, expressly declined to "reach[ ] behind the transfer [to hold] appellant waived his rights at the time of the confession." 525 S.W.2d at 514.

**10.** We do not thereby intimate that *Swink,* supra, was wrongly decided. That portion of the opinion which we disapprove today was couched in terms of an alternative basis for disposition of that cause.

(1963), police interrogation techniques alleged to have been coercive, either physically or psychologically, were of such a nature that any confession thereby obtained was unlikely to have been "the product of a rational intellect and a free will." *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 304 (1978), citing *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, 782 (1963), which in turn quotes *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280–81, 4 L.Ed.2d 242, 249 (1960). Certainly that the accused is a juvenile is a relevant factor in this analysis, and could well prove determinative where all other circumstances "would make us pause for careful inquiry if a mature man were involved." *Haley v. Ohio*, 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224, 228 (1948).

Here, of course, appellant's initial oral confession was not admitted at trial. It may be that two confessions, the first taken under coercive circumstances, are so closely related in time and place "that one must say the facts of one control the character of the other[.]" *Leyra v. Denno*, 347 U.S. 556, 561, 74 S.Ct. 716, 719, 98 L.Ed. 948, 952 (1954), quoting *Lyons v. Oklahoma*, 322 U.S. 596, 602, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481, 1486 (1944). In this cause, however, appellant's first confession was not deemed inadmissible because actually coerced. Thus, this is not a case of involuntariness of an initial confession spilling over to render a second confession involuntary as well.

Instead the court of appeals ruled that, having already confessed, albeit voluntarily, and unaware that her first confession could not be used against her, appellant might well have felt she had nothing to lose by speaking again, and therefore she "had no opportunity to exercise a free and unconstrained will." 715 S.W.2d at 794. In *United States v. Bayer*, supra, the Supreme Court was confronted with an adult whose first confession the Court "assume[d]" *arguendo* was inadmissible. The Court refused to hold a second confession, given six months later, the involuntary product of the first. Responding to the lower court's holding that the second con-

fession was "patently the fruit of the earlier one," the Supreme Court remarked:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free from the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."

331 U.S. at 540–41, 67 S.Ct. at 1394, 91 L.Ed. 1654. Taking this cue, the court of appeals in this cause eschewed a "tainted fruit" analysis. Nevertheless, the court apparently read *United States v. Bayer*, supra, to support the proposition that the "disadvantages" identified therein could render a subsequent confession of an accused involuntary under some circumstances. Here the court of appeals found the most compelling circumstances to be appellant's youth.

### B.

The State maintains that *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed. 2d 222 (1985), "sounded the death knell for the 'cat out of the bag' theory." There an eighteen year old youth was questioned briefly in his home after his arrest, *sans Miranda* warnings, and gave police an incriminating answer. He was later Mirandized at the Sheriff's headquarters, and gave a complete written statement. At trial his initial unwarned response was suppressed, but his subsequent statement was admitted in evidence. The cause was reversed in the Oregon appellate courts, and the Supreme Court granted certiorari in order to decide, *inter alia*, whether the unwarned statement Elstad gave compromised the voluntariness of his later warned confession. Strictly speaking, *Oregon v. Elstad*, supra, did not address the issue of due process voluntariness, *eo nomine*.

Rather, the Court confronted the analogous question whether Elstad's earlier, uncautioned statement vitiated the otherwise apparent voluntariness of his waiver of Fifth Amendment rights to remain silent and obtain counsel before questioning, subsequent to his second, fully warned confession.[11]

The Supreme Court began its analysis of this issue, in part IIB of its opinion, by reiterating a point it had made in another context in part IIA, that "[t]he failure of police to administer Miranda warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised." 470 U.S. at 310, 105 S.Ct. at 1293, 84 L.Ed.2d at 233. Thus the Court proceeded from the premise that an unwarned statement is only a presumed, rather than an actual violation of the Fifth Amendment privilege. But failure to give *Miranda* warnings, while violative of prophylactic measures designed to safeguard the accused's Fifth Amendment right, is not in itself a constitutional violation. See *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). From this the Court reasoned that unless an initial statement, albeit unwarned, is actually "involuntary,"[12] the Miranda warning preceding a subsequent statement "ordinarily should suffice to remove the conditions that precluded admission of the earlier statement," 470 U.S. at 314, S.Ct. at 1296, L.Ed.2d at 235, and the second statement "should ordinarily be viewed as an 'act of free will.'" U.S. at 311, S.Ct. at 1294, L.Ed.2d at 233, quoting *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Responding specifically to Elstad's "cat-out-of-the-bag" argument, the Court observed it had "never held that the psychological impact of voluntary disclosure of a guilty secret qualifies as State compulsion or compromises the voluntariness of a subsequent informed waiver." 470 U.S. at 312, S.Ct. at 1294, L.Ed.2d at 234. "Certainly," the Court continued, "in [Elstad's] case, the causal connection between any psychological disadvantage created by his admission and his ultimate decision to cooperate is speculative and attenuated at best." U.S. at 312–13, S.Ct. at 1295–96, L.Ed.2d at 234–35. Accordingly, the Court held that the "voluntariness" of his waiver of *Miranda* rights prior to his second confession was unaffected by his earlier "unwarned but clearly voluntary" statement.

 Though it speaks in terms of voluntariness of waiver of the Fifth Amendment privilege against self-incrimination, we think *Oregon v. Elstad,* supra, also informs our analysis of whether appellant's second confession was voluntary under the Due Process Clause. The factors involved in determining "coercion," *vel non,* for due process purposes, do not materially differ from those relevant to deciding whether an inculpatory statement was "compelled" under the Fifth Amendment. As in the due process inquiry, voluntariness of the waiver of the Fifth Amendment rights is gleaned from the totality of the circumstances. *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Voluntariness in either context may be established, consistently with the Federal Constitution, by a preponderance of the evidence. Compare *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) and *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).[13] The Supreme Court has found

---

**11.** In *Miranda v. Arizona,* supra, the Supreme Court held for the first time that the Fifth Amendment privilege against compulsory selfincrimination applies in context of custodial interrogation by police. Since that time the focus has largely shifted from questions of due process "coercion," to whether Fifth Amendment rights have been "intelligently, knowingly and voluntarily" waived, so as to dispel the possibility of official "compulsion." Nevertheless, "the Court has continued to measure confessions against the requirements of due process." *Mil-*

*ler v. Fenton,* 474 U.S. at 110, 106 S.Ct. at 449, 88 L.Ed.2d at 410.

**12.** Here it is difficult to tell if by "involuntary" the Court means "coerced," for purposes of due process analysis, "compelled," for purposes of the Fifth Amendment privilege, or perhaps both. See n. 11, *ante.*

**13.** It appears this Court has yet to decide whether only this constitutionally minimal, or a higher standard of proof, may be required as a

"no reason to require more in the way of a 'voluntariness' inquiry in the Miranda waiver context than in the [due process] confession context." *Colorado v. Connelly,* 479 U.S. at 169–70, 107 S.Ct. at 523, 93 L.Ed.2d at 486. The analyses are substantially the same.

## C.

As a general proposition the State carries the burden of proving that a confession was given voluntarily under the Due Process Clause, at least once the accused has alleged it was not. E.g., *Farr v. State,* 519 S.W.2d 876 (Tex.Cr.App.1975). Here the State established compliance with both Fifth Amendment *Miranda* requirements, and greater measures of protection afforded juveniles by § 51.09(b)(1), supra, before appellant's written statement was taken. The second magistrate went to great lengths to assure himself appellant understood the Fifth Amendment rights she was forgoing, the consequences she faced, and that her written statement was nevertheless freely made. But for the existence of her prior oral statement, there would be no question the State has met its burden to show voluntariness, in both the Fifth Amendment and, perforce, the due process senses.

Nor does appellant claim her prior oral statement itself was involuntary in any respect. Although not in strict accordance with § 51.09, supra, appellant was fully Mirandized, and thus she was informed she could choose not to speak. There is no indication her waiver of *Miranda* rights at this time was finagled or coerced. Such an oral confession suffers no federal constitutional infirmities. It is inadmissible only because the legislature long ago made a policy determination that oral confessions are notoriously unreliable, at least absent a specified character of corroboration. See *Butler v. State,* 493 S.W.2d 190, 193 (Tex. Cr.App.1973). Thus, admissibility of appel-

matter of state law. See *Nash v. State,* 477 S.W.2d 557, 564 n. 6 (Tex.Cr.App.1972); *Valerio v. State,* 494 S.W.2d 892, 896, n. 2 (Tex.Cr.App. 1973); *Farr v. State,* 519 S.W.2d 876, 879–80 n. 3 (Tex.Cr.App.1975).

lant's initial statement does not turn on a question of her voluntariness. Under these circumstances, as *Oregon v. Elstad,* supra, establishes, "ordinarily" proof of proper warnings preceding the subsequent written statement, and the apparent willingness of appellant, under the totality of circumstances, including the fact she did in fact sign the statement without any duress, and out of the presence of her police interrogator, to waive her rights following those warnings, should suffice to meet the State's burden of production on the issue of voluntariness.

Thus, the State maintains, it should not have been required to prove the oral confession was admissible. In the premises given, we agree. For even assuming appellant's oral statement did not comport with § 51.09(b)(2), supra, and was thus inadmissible, *Elstad* forecloses any presumption against the State that it necessarily had the effect of overbearing a sudden resolve on appellant's part not to speak further. This is not to deny there is "some intuitive behavioral validity" to the "cat-out-of-the-bag" notion. *Bell v. State,* supra at 793. The mere possibility such a "psychological disadvantage" was at work, however, absent some evidentiary corroboration, is insufficient to rebut the State's otherwise adequate showing of voluntariness. At least for federal due process purposes,[14] we cannot engage in the type of speculation the Supreme Court expressly abjured in *Elstad.*

Certainly, as the State appears to concede, had appellant actually testified she would not have given the written confession but for the earlier oral one, a fact issue would have been raised. In that event it would behoove the State to produce some evidence the oral statement was admissible, and the trial court would then have been required to factor this evidence into its determination of due process voluntariness, under the totality of the circum-

14. The court of appeals did not rely in its holding upon the Texas Constitution. Whether admission of appellant's written confession violates any provision of our own constitution is therefore not before us in this petition.

stances test. To this extent the "cat-out-of-the-bag" still lives. Assuming the trial court found the first statement inadmissible, two other factors would then militate in appellant's favor in this analysis. First, appellant's youth could certainly make her "but/for" claim appear more plausible than it would be coming from an adult. Cf. *Haley v. Ohio,* supra. Secondly, not only was appellant *not* told her prior oral statement could not be used against her before she signed her written confession; in fact, she was positively told, as part of the *Miranda* warning, that her prior statement *would* be so used. But considerations such as the age and experience of a juvenile, though relevant factors in the totality of the circumstances analysis, are just that—factors—and no more. Cf. *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Without more definite evidence appellant's prior statement played an actual role in her volitional processes, we cannot fault the trial court, consistently with *Oregon v. Elstad,* supra, for its finding that the State had sustained its burden to prove her subsequent written confession was voluntary under the Due Process Clause.

The judgment of the court of appeals is, accordingly, reversed insofar as it held appellant's written confession was erroneously admitted at her trial. Because the court of appeals has already disposed of appellant's other points of error against her, we affirm the judgment of the trial court.

TEAGUE, J., concurs in the result.