TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-98-00654-CV






In the Matter of R. J. H.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-15,235, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 Our opinion and judgment issued herein on August 26, 1999 are withdrawn, and
the following is substituted in lieu thereof.

 Following appellant's plea of true to the State's petition alleging that he committed
the offense of burglary of a habitation,(1) the 98th District Court, sitting as the Juvenile Court of
Travis County, adjudicated appellant to have engaged in delinquent conduct(2) by committing the
pleaded-to offense. Appellant was placed on "intensive supervision probation" for one year. 
Pursuant to an agreement with the State, appellant appeals the denial of his pre-trial motion to
suppress. We will reverse the delinquency adjudication and remand the cause to the trial court.



FACTUAL AND PROCEDURAL BACKGROUND



 Appellant, a minor, was a passenger in a car driven by his adult cousin, Pedro
Ybarra, when Department of Public Safety Officer Michael Scheffler initiated a traffic stop. 
Scheffler discovered Ybarra was driving without a driver's license and placed him under arrest. 
Pursuant to a search of the vehicle incident to the arrest, Scheffler discovered what he believed
to be stolen property. Scheffler contacted the Austin Police Department from the scene and
confirmed that the property in the vehicle matched the description of property stolen from a
residence the previous day.

 Appellant was handcuffed and transported to the DPS Capitol District Office, where
he was taken to Corporal Elder's office. Elder held appellant while he contacted the juvenile's
father; upon the father's arrival, Elder read appellant his Miranda(3) warnings and began
questioning him. Eventually, appellant signed a written statement confessing to his involvement
in the burglary as follows: Ybarra and appellant went searching for an unoccupied house with the
intention of committing burglary. While Ybarra waited in the car, appellant broke the lock on a
window of the chosen home. He then opened the door and motioned for Ybarra to join him. The
two gathered various electronic items, CD's, and a set of golf clubs, and loaded the property into
the car.

 After giving his written confession, appellant was released to the custody of his
father. In the days following his release, appellant spoke to Elder on several occasions,(4) each time
indicating he wished to revise his written statement to exonerate Ybarra by accepting sole
responsibility for the burglary. Appellant also told Elder he would lead Elder to the stolen
property not yet recovered, although this promise was never carried out.

 The State eventually filed a petition alleging that appellant had engaged in
delinquent conduct by committing burglary of a habitation. Appellant filed a pre-trial motion to
suppress any statements made by him related to the burglary, written or oral. The trial court
agreed the written confession should be excluded from evidence, finding that it was taken in
violation of the provisions of the Family Code outlining the requirements for obtaining a written
statement from a juvenile.(5) However, the trial court found that appellant was not in custody when
he made the subsequent oral statements relating his wish to revise his written statement; the court
therefore refused to suppress these statements.

 Appellant thereafter pleaded true to the allegation that he had committed burglary
of a habitation pursuant to an agreement allowing him to appeal the partial denial of his motion
to suppress.(6) The trial court rendered an adjudication of delinquency for committing the charged
offense and placed appellant on intensive-supervision probation. In a single point of error,
appellant challenges the partial denial of his motion to suppress.


DISCUSSION



Standard of Review


 Generally, an appellate court reviews a trial court's ruling on a motion to suppress
for abuse of discretion. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
However, when presented with a pure question of law based on undisputed facts, a de novo review
is proper. See Oles v. State, 965 S.W.2d 641, 643 (Tex. App.--Houston [1st Dist.] 1998, no pet.)
(citing Guzman, 955 S.W.2d at 89). The parties in this case do not dispute the historical facts as
found by the trial court. Appellant disputes only the trial court's application of the law to those
facts. Since this appeal presents a question of law based on undisputed facts, we will conduct a
de novo review. See Loesch v. State, 958 S.W.2d 830, 831-32 (Tex. Crim. App. 1997).


Suppression of Statements 


 In his sole point of error, appellant asserts that the trial court erroneously refused
to suppress his statements made to Elder in the days following his initial release. Appellant argues
these subsequent statements were "tainted" by the prior illegally obtained written statement, and
thus were involuntary within the meaning of the Due Process Clause of the United States
Constitution.(7) See U.S. Const. amend. V.

 The argument that a prior inadmissible statement can taint a subsequent statement
has been referred to as the "cat out of the bag" theory. See Griffin v. State, 765 S.W.2d 422 (Tex.
Crim. App. 1989). It is based on the notion that once a defendant has confessed, but is not aware
the confession cannot be used against him, he may feel he has nothing to lose by making additional
incriminating statements; so burdened by the psychological pressure of the first confession, his
resolve to remain silent may be broken, rendering any subsequent statements involuntary under
the federal due process clause.

 In Griffin, the court of criminal appeals severely limited the application of the "cat
out of the bag" theory. See Rodriguez v. State, 968 S.W.2d 554, 557 (Tex. App.--Houston [14th
Dist.] 1998, no pet.). Nonetheless, the court refused to eliminate the theory altogether; instead,
the court applied a "totality of the circumstances" test to determine what effect giving a statutorily
inadmissible statement had on the voluntariness of a subsequent statement. See Griffin, 765
S.W.2d at 427, 430-31; see also Rodriguez, 968 S.W.2d at 558; In re J.T.H., 779 S.W.2d 954,
958 (Tex. App.--Austin 1989, no writ).

 Griffin involved a juvenile who was arrested and given her Miranda warnings
before orally implicating herself in a murder. She was then taken to a magistrate to receive the
required juvenile warnings, and subsequently signed a written statement. Griffin argued that the
voluntariness of her written statement was compromised by the initial inadmissible oral confession. 
The court of criminal appeals held that, because of the lack of "more definite evidence" that the
prior statement "played an actual role in [Griffin's] volitional processes," the trial court could not
be faulted "for its finding that the State had sustained its burden to prove her subsequent written
confession was voluntary under the Due Process Clause." Griffin, 765 S.W.2d at 431.(8) In so
holding, the court noted that the "mere possibility" of a "psychological disadvantage" is not enough
to rebut an otherwise adequate showing of voluntariness. Id. at 430. Nevertheless, the court went
on to state:


 Certainly . . . had appellant actually testified she would not have given the
written confession but for the earlier oral one, a fact issue would have been raised. 
In that event, it would behoove the State to produce some evidence the oral
statement was admissible, and the trial court would then have been required to
factor this evidence into its determination of due process voluntariness, under the
totality of the circumstances test. To this extent, the "cat-out-of-the-bag" still lives. 
Assuming the trial court found the first statement inadmissible, two other factors
would then militate in appellant's favor in this analysis. First, appellant's youth
could certainly make her "but/for" claim appear more plausible than it would be
coming from an adult. Secondly, not only was appellant not told her prior oral
statement could not be used against her before she signed her written confession;
in fact, she was positively told, as part of the Miranda warning, that her prior
statement would be so used.



Id. (citations omitted).


 We turn to the application of the Griffin rationale to the instant case. The
uncontroverted evidence shows that, on several occasions following his initial release, appellant
made statements to Officer Elder in which he sought to place all the blame for the burglary on
himself. Accordingly to Elder's testimony, all of these statements were made in the context of
a request that Elder allow appellant to revise his earlier written confession. 


Q: (by prosecutor): . . . Did [RJH] contact you about changing the statement?


A: (by Officer Elder): Yes, he did.


Q: Okay. Did you contact him first or did he contact you first?


A: He contacted me first.


Q: Approximately when was the first time after this that he contacted you?


A: Approximately four days to a week later.


* * *


Q: What did [RJH] say to you regarding this?


A: He telephoned my office and asked me if he could change his statement.


Q: Did you indicate to him -- well, let me back up. Did he indicate to you why
or how he wanted to change his statement?


A: He indicated to me that his cousin wasn't involved at all in the burglary of the
residence.


* * *


Q: Sir, I gather from what you're saying is he called you more than once?


A: Yes. We talked quite often.


Q: And he would call you to ask about changing the statement?


A: Yes.


Q: Was it always that he wanted to change the statement to say that it was only
him?


A: It was always -- every conversation relating to the statement was may I change
the statement and my cousin wasn't involved at all in the burglary of the
residence.


 The connection between the prior inadmissible statement and the subsequent
statements is thus undeniable; appellant's requests to change the earlier written statement obviously
would not have been made but for the existence of the earlier statement. It is simply not
reasonable to conclude otherwise. This direct causal connection shows that the prior statement
played an actual role in appellant's volitional processes. See Griffin, 765 S.W.2d at 431. 
Reviewing the totality of the circumstances surrounding the statements at issue, we think it clear
that appellant would not have made the subsequent statements but for the existence of the earlier,
inadmissible statement. The fact that the subsequent oral statements did not result from "official,
coercive conduct" committed by law enforcement is irrelevant. The Family code expressly
provides that "[a]n extrajudicial statement which was obtained without fulfilling the requirements
of this title . . . may not be used in an adjudication hearing." Tex. Fam. Code Ann. § 54.03(e)
(West Supp. 2000). Actual coercive conduct, in the traditional sense, is not required. See In re
C.R., 995 S.W.2d 778, 784-85 (Tex. App.--Austin 1999, pet. denied).

 Other factors also mitigate in favor of appellant. First, he is a minor, making his
"but-for" argument more plausible. See id. Second, as part of the Miranda warnings given to
appellant prior to his signing the written confession, appellant was affirmatively told that his
written confession would be used against him. See id.

 We believe that the record shows that, under the totality of the circumstances,
appellant's subsequent statements were involuntary under the federal Due Process Clause. In
addition, our review of the record reveals no evidence offered by the State to sustain its burden
to prove that the subsequent statements were not the product of a psychological disadvantage, and
thus voluntary.

 We recognize that there is no presumption that giving an inadmissible statement
prior to an admissible statement renders the second statement involuntary for purposes of federal
due process. See Rodriguez, 968 S.W.2d at 558; In re J.T.H., 779 S.W.2d at 958-59. We apply
no such presumption. Instead, we conduct a thorough review of the record and apply the analysis
found in Griffin to the evidence contained therein. Given (1) the undeniable connection between
the earlier inadmissible statement and the later statements, indicating that appellant would not have
made the latter but for the former; (2) appellant's juvenile status; (3) appellant's belief that the
written statement would be used against him; and (4) the paucity of evidence by the State to meet
its burden to prove voluntariness, we conclude that, under the totality of the circumstances,
appellant's statements to Elder requesting a revision of his written statement were not voluntary
under the federal Due Process Clause. Accordingly, the trial court erred in denying appellant's
motion to suppress these statements. The point of error is sustained.


Harm Analysis

 Appellant's statements that he seeks to exclude--desiring to revise his earlier
confession in order to take full blame--are obviously inculpatory. Appellant did not plead guilty
until his motion to suppress had been partially overruled. The statements have therefore been
"used" in obtaining his confession, resulting in harm from the partial denial of the motion
irrespective of the existence of other incriminatory evidence. See Gonzales v. State, 966 S.W.2d
521, 523-24 (Tex. Crim. App. 1998); McKenna v. State, 780 S.W.2d 797, 798-800 (Tex. Crim.
App. 1989); Kraft v. State, 762 S.W.2d 612, 613-15 (Tex. Crim. App. 1988); Anthony v. State,
954 S.W.2d 132, 136 (Tex. App.--San Antonio 1997, no pet.); Woodberry v. State, 856 S.W.2d
453, 458 (Tex. App.--Amarillo 1993, no pet.).


CONCLUSION


 Having found the trial court erred in denying appellant's motion to suppress the 
statements indicating appellant's desire to amend his written confession, and having found such 

denial to have been harmful, we reverse the judgment of delinquency and remand the cause to the
trial court for further proceedings.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Remanded

Filed: October 19, 2000

Publish


1. See Tex. Penal Code Ann. § 30.02 (West 1994 & Supp. 1999).
2. See Tex. Fam. Code Ann. § 54.03 (West 1996 & Supp. 1999).
3. Miranda v. Arizona, 384 U.S. 436 (1966).
4. It is unclear from the record how may times Elder and appellant spoke, or who initiated
each contact.
5. See Tex. Fam. Code Ann. § 51.095 (West Supp. 1999).
6. See Tex. R. App. P. 25.2(b)(3). Although this rule addresses criminal cases, the parties
assume it also applies to juvenile matters, which are often referred to as quasi-criminal. We also
assume, without deciding, that Rule 25.2(b)(3) applies to appellant's plea arrangement.
7. While appellant does not specifically challenge the admission of the subsequent statement
based on the Due Process Clause, it is obvious from his brief to this Court that this is the basis of
his argument.
8. Generally, it is the State's burden to show statements were given voluntarily under the
federal due process clause. See Griffin, 765 S.W.2d at 430; In re J.T.H., 779 S.W.2d at 958.


995 S.W.2d 778, 784-85 (Tex. App.--Austin 1999, pet. denied).

 Other factors also mitigate in favor of appellant. First, he is a minor, making his
"but-for" argument more plausible. See id. Second, as part of the Miranda warnings given to
appellant prior to his signing the written confession, appellant was affirmatively told that his
written confession would be used against him. See id.

 We believe that the record shows that, under the totality of the circumstances,
appellant's subsequent statements were involuntary under the federal Due Process Clause. In
addition, our review of the record reveals no evidence offered by the State to sustain its burden
to prove that the subsequent statements were not the product of a psychological disadvantage, and
thus voluntary.

 We recognize that there is no presumption that giving an inadmissible statement
prior to an admissible statement renders the second statement involuntary for purposes of federal
due process. See Rodriguez, 968 S.W.2d a