In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00111-CV


______________________________




ERICH W. NORRIS, Appellant



V.



STARBUCK'S CORPORATION, D/B/A


STARBUCK'S COFFEE COMPANY, Appellee



 


On Appeal from the 165th Judicial District Court


Harris County, Texas


Trial Court No. 2000-50870




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Erich W. Norris has filed a motion for extension of time to file a notice of restricted appeal,
along with the notice of restricted appeal. He relies on Tex. R. App. P. 26.3 as authority for
permitting him to bring an appeal within six months of the judgment. 

 For context, Norris originally filed an appeal from a summary judgment taken against him
in his lawsuit against Starbuck's Corporation, d/b/a Starbuck's Coffee Company. On December 3,
2002, we dismissed his appeal for want of prosecution. We issued our mandate on February 10,
2003. 

 Norris is now attempting to file an appeal to this Court from our December 3 opinion. 

 This Court has jurisdiction over appeals from certain trial courts, as provided by
constitutional fiat. Tex. Const. art. V, § 6. We do not have jurisdiction over an appeal taken to this
Court from our own judgment. 

 We dismiss the appeal.




 Jack Carter

 Justice


Date Submitted: September 18, 2003

Date Decided: September 19, 2003

 



 an inculpatory
statement was compelled contrary to the United States Constitution's Fifth Amendment privilege
against self-incrimination. U. S. Const. amend. V; Colorado v. Connelly, 479 U.S. 157, 169-70,
107 S.Ct. 515, 93 L.Ed.2d 473 (1986); Griffin v. State, 765 S.W.2d 422, 429-30 (Tex. Crim. App.
1989).

 The law surrounding the issue of voluntariness of a statement is well established. We judge
the voluntariness of a statement by looking at the totality of the circumstances surrounding the
making of the statement, including both the characteristics of the accused and the details of the
interrogation. See Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854
(1973); Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). A statement is voluntarily
made if it is the product of an essentially free and unconstrained choice by its maker. See
Schneckloth v. Bustamonte, 412 U.S. at 225; State v. Terrazas, 4 S.W.3d 720, 723 (Tex. Crim. App.
1999). Conversely, a statement is involuntary for purposes of federal due process if there was
official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have
been the product of an essentially free and unconstrained choice by its maker. See Alvarado v. State,
912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Once a defendant moves to suppress a statement on
the ground of involuntariness, the due process guarantee requires the trial court to hold a hearing
outside the presence of the jury concerning the admissibility of the statement. Jackson v. Denno, 378
U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Tex.  Code  Crim.  Proc.  Ann.  art. 38.22, 

§ 6 and Tex. R. Evid. 104(c) have the same requirement. At this hearing, the state has the burden
of proof to show by a preponderance of the evidence that the statement was freely and voluntarily
made. See Griffin v. State, 765 S.W.2d 422, 429 (Tex. Crim. App. 1989). 

 Dawson contends his statement was involuntary because: 1) he did not write it himself; 2)
he did not fully understand his rights; 3) he requested, but was denied, an attorney; 4) he was coerced
and intimidated into making the statement, and he was ignored when he stated that he did not wish
to make a statement; 5) the police failed to make a videotape or audiotape of the session; 6) he did
not effectively read the statement because he cannot read or write the English language; and 7) he
was promised a lower bond and lower criminal charge if he confessed, and he relied on such
promise. Darryl Griffin, the police officer who took Dawson's statement, testified at the hearing, as
did Dawson himself. Thus, the trial court's conclusion that Dawson's statement was voluntary was
based on a direct evaluation of the witnesses' credibility and demeanor.

 Griffin testified that before questioning and in the presence of a special agent for the Federal
Bureau of Investigation, he verbally gave Dawson each particular warning necessitated by Miranda
and Article 38.22. Dawson indicated that he understood those rights and that he could read and
write. After Dawson was handed a form entitled "Voluntary Statement" at the top of which the same
warnings were repeated, Dawson read and initialed alongside each warning. Griffin then wrote
Dawson's statement as it was related to him, and Dawson signed the statement after reading it and
making corrections. According to Griffin, at no time did he promise Dawson anything of value or
say anything to coerce or force Dawson to give a statement; and at no time did Dawson request an
attorney or indicate that he wished to terminate the interview. The interview took place in Griffin's
office.

 Dawson testified that he explicitly told the police he did not want to make a statement, that
he wanted a lawyer, and that he had stated as much to other officers in addition to Griffin. He further
testified that Griffin told him that they were going to upgrade the charges to first-degree murder, and
that Griffin also suggested that if Dawson cooperated and gave a statement, Dawson could get a
lower bond. At some point in the interrogation, Griffin handed Dawson the written statement of
Russell Leonard, who was also charged with the murder of Francois Dean. Dawson read Leonard's
statement. Dawson testified that although he initialed each warning on the voluntary statement form
and signed it at the end, most of the words written therein were not his, but rather were Griffin's and
the special agent's words. Dawson cooperated only to get a lower bond.

 Most of Dawson's complaints on appeal, enumerated above, are purely a question of witness
credibility and demeanor. This is true regarding Dawson's contentions that he did not fully
understand his rights, that he was coerced and intimidated into making the statement, that he was
ignored when he stated he did not wish to make a statement, and that he was promised a lower bond
and a lower criminal charge if he confessed. The trial court made specific findings of fact that these
contentions were not true, and such findings are supported by Griffin's testimony. We will therefore
not disturb them. 

 Dawson's contention that involuntariness is shown by the fact that he did not write the
statement himself is contrary to the express provisions of Article 38.22, which allow statements even
if only signed by an accused. See Tex. Code Crim. Proc. Ann. art. 38.22, § 6. His contention that
the interrogation had to be videotaped or audiotaped is unsupported by any statute or case law. Here,
we are not dealing with the admission of an oral statement. See Tex. Code Crim. Proc. Ann. art.
38.22, § 3 (Vernon Supp. 2002). While the absence of taping where equipment is readily available
may be relevant to the credibility of a witness testifying about a statement, measuring credibility is
the province of the trial court. Finally, Dawson's contention that he cannot read or write the English
language is belied by his own testimony that he read Leonard's statement.

 The evidence supports the trial court's finding that no coercive conduct occurred with respect
to the taking of Dawson's statement. Nothing in the totality of these circumstances suggests that
Dawson's statement was made involuntarily. 

 The judgment is therefore affirmed.

 


 William J. Cornelius

 Chief Justice


Date Submitted: February 18, 2002

Date Decided: February 21, 2002


Publish