COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-08-280-CR

JEROME CARR                                                          APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Jerome Carr appeals his conviction for aggravated robbery with a deadly weapon. After a jury found Appellant guilty and assessed his punishment at eleven years' confinement, the trial court sentenced him accordingly. In four points, Appellant argues that he received ineffective assistance of counsel. We will affirm.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II. FACTUAL BACKGROUND

Carohn Carroll and his roommate Aaron Watkins were arrested and taken to jail after police searched their townhome and found drug paraphernalia in it. Watkins confessed that the drug paraphernalia was his, but police also arrested Carroll and took both men to jail.[2]

The next day, Carroll and Watkins were released, and they returned to the townhome. Later that same day, Watkins went to a nearby gas station to get a money order to pay rent, and Carroll headed upstairs to shower and get ready for work.

Carroll heard a knock at the door and thought that Watkins had forgotten his keys. Carroll looked out the peephole and saw a man that he recognized but whose name he did not know; the man was later identified as Wymie. Carroll opened the door, stepped outside, and closed the door. Carroll told Wymie that he and Watkins had been arrested the previous night and that the police had said that anyone who entered the townhome would go to jail. While he was outside, Carroll saw Carr standing against the wall. Carr and Wymie asked if Watkins was home, and Carroll opened the door and yelled Watkins's name to see if he had returned while Carroll had been in the shower.

---

[2] ... Carroll testified that he was never prosecuted for this offense.

At that point, Carr stepped inside the townhome, lifted his shirt, pulled out a black 9 mm handgun, cocked it, and put it to Carroll's head. Carr pushed the gun into Carroll's head as he repeatedly asked, "Where's the money at? Where's the weed at?" Carroll said that he did not owe Carr any money. Carr then put the gun to Carroll's neck, cursed a couple of times, and pulled the trigger, but the gun did not fire. Carroll said that Carr looked at the gun like he was shocked, while Wymie stated that he was shocked that Carr had pulled the trigger.

An altercation ensued, and Carroll escaped, jumping down the stairs and running zig-zag through the parking lot so that he would not get shot. While he was running, Carroll heard a bullet hit the ground and saw Carr and Wymie looking at the gun. Carroll caught the assistant manager of the townhomes walking to her car and told her that "he tried to kill me." The assistant manager pulled out her cell phone and called the police. While the assistant manager was calling the police, she and Carroll saw Carr and Wymie leaving the area.

An officer arrived "within seconds," and Carroll gave the officer a summary of the events and a description of Carr and Wymie. Carroll gave the police a written statement several days after the incident. After police arrested Carr, they videotaped an interview with him.

3

The jury heard testimony from two of the officers who worked on the case, Carroll, and Carr's aunt[3] and watched the videotaped interview of Carr; the jury found Carr guilty of aggravated robbery with a deadly weapon as charged in the indictment. After hearing the punishment evidence, the jury assessed punishment at eleven years' confinement, and the trial court sentenced Carr accordingly. That same day, Carr filed his notice of appeal.[4]

### III. Ineffective Assistance of Counsel Claims Not Founded in the Record

All four of Carr's points argue that he was denied effective assistance of counsel under both the United States and Texas constitutions due to trial counsels' failure to file a motion to suppress Carr's videotaped interview and failure to request a limiting instruction concerning part of the interview. The State argues that the record is insufficient to overcome the presumption that defense counsels' conduct fell within the wide range of professional competent assistance.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsels' representation fell below the

---

[3] ... Carr's aunt testified that when she lived in Arlington, Carroll had come over to her house on several occasions to smoke marijuana and that her boyfriend had taken food to Carroll in exchange for marijuana.

[4] ... No motion for new trial was filed.

4

standard of prevailing professional norms and that there is a reasonable probability that, but for counsels' deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsels' assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsels' representation is highly deferential, and the reviewing court indulges a strong presumption that counsels' conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional

assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsels' errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

B.    Trial Counsels' Objections

During the State's direct examination of Detective Danny Nutt, the State offered into evidence the videotaped interview of Carr. Before the State played the videotape, defense counsel objected based on the Fifth Amendment, arguing that Carr had not taken the stand and might not take the stand. The

trial court overruled this objection, and the videotape was played for the jury. After the jury watched the video, defense counsel asserted a hearsay objection to Detective Nutt's statements about what Wymie had said and requested an instruction to the jury to disregard these statements. The trial court overruled this objection.

The State then concluded its direct examination of Detective Nutt. After defense counsel cross-examined the detective, passed the witness, and Detective Nutt was excused, defense counsel indicated her desire to "in an abundance of caution," "put on the record" "our concern about the officer referring to information given to him by someone else." When the trial court stated that it had already ruled on this issue, defense counsel complained that "we don't have an opportunity to confront, is our main concern." The trial court again indicated that it had already ruled on this issue.

C.     *Strickland* Analysis

In his first and second points, Carr argues that his trial counsel provided ineffective assistance by failing to file a pretrial motion to suppress the video. Trial counsels' failure to file a motion to suppress is not per se ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2587 (1986); *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.). Counsel is not required to engage in the filing of

7

futile motions. *Hollis*, 219 S.W.3d at 456 (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). Rather, to satisfy the *Strickland* test and prevail on an ineffective assistance claim premised on counsels' failure to file a motion to suppress, an appellant must show by a preponderance of the evidence that the result of the proceeding would have been different—i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Id.* (citing *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998)).

Carr argues that if a motion to suppress had been filed, it would have been granted; although Detective Nutt read Carr his rights, although Carr indicated that he understood his rights, and although Carr then proceeded to answer the questions propounded by Detective Nutt, Carr points out that he did not affirmatively waive his rights before he made the statements. He contends that the statements were involuntary under article 38.22 of the code of criminal procedure for this reason. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005). An express, affirmative verbal statement from an accused indicating that he waives his rights is not required in order for a custodial, oral statement to be admissible under article 38.22, section 3. *See, e.g., Etheridge v. State*, 903 S.W.2d 1, 18 (Tex. Crim. App. 1994), *cert. denied*, 516 U.S. 920 (1995); *Barefield v. State*, 784 S.W.2d 38, 40–41 (Tex. Crim. App.

8

1989), *overruled on other grounds by Zimmerman v. State*, 860 S.W.2d 89 (Tex. Crim. App. 1993) *and cert. denied*, 497 U.S. 1011 (1990). Instead, in measuring the voluntariness of a confession, courts look to the totality of the circumstances surrounding the making of the statement. *See, e.g., Griffin v. State*, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989). Frequently, when a defendant has been advised of his rights, indicates that he understands his rights, and then chooses to proceed to answer questions, from the totality of these circumstances it may be inferred that the accused waived his rights. *See Hargrove v. State*, 162 S.W.3d 313, 318–19 (Tex. App.—Fort Worth 2005, pet. ref'd); *State v. Oliver*, 29 S.W.3d 190, 193 (Tex. App.—San Antonio 2000, pet. ref'd); *Gomes v. State*, 9 S.W.3d 373, 381 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Thus, because Carr received the required statutory warnings, indicated that he understood them, and proceeded to answer Detective Nutt's questions, he has not established that a motion to suppress—alleging the involuntariness of his statements based on the lack of an affirmative waiver of his rights, if filed—would have been granted. *See, e.g., Etheridge*, 903 S.W.2d at 18; *Hargrove,* 162 S.W.3d at 318–19; *Oliver*, 29 S.W.3d at 193.

Moreover, as mentioned above, Carr did not file a motion for new trial; therefore, no record exists establishing defense counsels' reasons for failing to

file a motion to suppress.[5] Nor does the record establish what evidence the State would have presented had defense counsel filed a motion to suppress. It is entirely possible that in this case defense counsel may have made a strategic decision not to file a motion to suppress when they knew that it was unlikely to be granted. *See, e.g., Hollis*, 219 S.W.3d at 456. Thus, Carr's claim of ineffective assistance of counsel based on a failure to file a motion to suppress cannot be sustained on this record. *See Thompson*, 9 S.W.3d at 813–14; *Jackson*, 973 S.W.2d at 957 (holding that appellant's claim of ineffective assistance could not be sustained based on the record before the appellate court because appellant failed to develop facts and details of the search sufficient to show that the search was invalid).

In his third and fourth points, Carr argues that his trial counsel provided ineffective assistance by not properly objecting to Carr's videotaped statement before it was admitted into evidence and by failing to request a limiting instruction with regard to Detective Nutt's hearsay statements that Wymie had corroborated Carroll's version of the events, including that Carr had a pistol. In the absence of evidence of trial counsels' reasons for the challenged conduct, an appellate court "commonly will assume a strategic motivation if

---

[5] The record reveals that defense counsel had notice from the State regarding the videotape approximately four months before trial.

any can possibly be imagined." *See Andrews v. State,* 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003). We will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See Thompson,* 9 S.W.3d at 814.

While many attorneys might have prudently objected and requested such a limiting instruction, it is equally possible that other reasonable and conscientious attorneys would not have objected or requested a limiting instruction in order to avoid drawing further attention to Wymie's statements. *See Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (explaining failure to request limiting instruction fell within the wide range of reasonable professional assistance and that because such conduct might be sound trial strategy, silent record did not satisfy appellant's burden under first *Strickland* prong); *Bryant v. State*, 282 S.W.3d 156, 171 (Tex. App.—Texarkana 2009, pet. ref'd) (holding record did not support ineffective assistance claim when appellate court could imagine a reasonable, strategic reason to explain trial counsel's failure to request a limiting instruction). Nothing in the record indicates what defense counsels' trial strategy was. Therefore, we cannot say that the alleged ineffectiveness is firmly founded in the record or that the record

11

affirmatively demonstrates the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814. Consequently, Carr has not met his heavy burden to defeat the strong presumption that trial counsels' actions fell within the wide range of reasonable professional assistance. *See Andrews*, 159 S.W.3d at 101.

We therefore hold that the record is insufficient to demonstrate that Carr's trial counsel rendered ineffective assistance on the grounds alleged by Carr.[6] And because we have held that trial counsels' conduct was not deficient under *Strickland*'s first prong, we need not address the second prong of the *Strickland* test. *See Andrews*, 159 S.W.3d at 101; *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (both stating that a failure to

---

[6] As noted by the court in *Jackson*, this is not unusual in cases of this sort:

> Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel. Indeed, in a case such as this, where the alleged derelictions primarily are errors of *omission* de hors the record rather than *commission* revealed in the trial record, collateral attack may be . . . the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record.

973 S.W.2d at 957.

make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel).  We therefore overrule Carr's four points.

## IV.  CONCLUSION

Having overruled Carr's four points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 17, 2009