# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---------------
NO. 03-01-00232-CR
NO. 03-01-00233-CR
---------------

**William Ethridge Hill, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---------------------------------------------------------------------

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 0981472 & 0981493, HONORABLE BOB PERKINS, JUDGE PRESIDING**
---------------------------------------------------------------------

Appellant William Ethridge Hill, Jr., brings this consolidated appeal from his convictions for arson and murder. *See* Tex. Pen. Code Ann. '' 19.02; 28.02 (West 1994 & Supp. 2002). In five issues, appellant contends that (1) the evidence is legally and factually insufficient to support his convictions; (2) the trial court erred by admitting appellant=s oral statement; (3) the trial court erred by admitting appellant=s written statement; (4) the trial court erred by admitting hearsay evidence; and (5) the trial court abused its discretion by denying appellant=s motion for new trial. We will affirm the judgment of the trial court.

## BACKGROUND

In the early morning hours of October 2, 1997, the Austin Fire Department received an alarm concerning a fire at the residence of William Allen. Allen=s badly burned body was discovered in the house, and the medical examiner determined that he had suffered a severe blow to his face which rendered him unconscious before his death. The medical examiner concluded that Allen died of smoke inhalation and ruled the case a homicide.

Lieutenant Michael Crabill, an arson investigator, determined that the point of origin of the fire was in the living room, in the southeast corner, in and around a reclining chair. He also determined that the fire was started by an open flame. Further, firefighters noted that two gas burners on the stove in the kitchen had been turned to the Aon@ position. Neighbors and firefighters did not realize the deceased was in the burning house because his vehicle was not parked in his driveway. In a statement to police, appellant later admitted that he moved the deceased=s vehicle down the street on the morning of the fire.

Detective Mark Gilchrest of the Austin Police Department began an investigation and discovered that the deceased had a roommate who had recently moved out of the house. Appellant was identified as the roommate. Billy Gene Harris, a neighbor of the deceased, testified that at 3:00 a.m. on the morning of October 2, 1997, he saw a person matching appellant=s description get out of a car parked down the street from the deceased=s house. Harris saw this individual walk toward the deceased=s house and return to his vehicle about twenty minutes later. Neighbors discovered the fire coming out of the deceased=s house at approximately 3:45 a.m.

2

Detective Gilchrest met with some of appellant=s acquaintances and learned that he left Austin on the day of the fire to visit his mother in the Washington, D.C. area. As a result of his investigation, Gilchrest also determined that appellant had recently stolen and forged several of the deceased=s checks and that the deceased had planned to file charges against appellant.

On October 10, Gilchrest contacted appellant at his mother=s home, asked him if he planned to return to Austin, and told him that they needed to talk further. Gilchrest also made arrangements to meet with FBI agent Ed Roach in Montgomery County, Maryland, to set up an interview with appellant.

On October 28, appellant voluntarily met with Gilchrest and Roach at the Montgomery County Police Department. During this meeting, appellant initially denied but subsequently admitted stealing and forging the deceased=s checks, being present at the deceased=s house on the morning of the fire, and engaging in a physical altercation with the deceased shortly before the fire. Appellant was arrested and indicted for arson and murder.

On February 7, 2001, the trial court rendered judgment on a jury verdict convicting appellant of arson and murder. Appellant appeals the judgment.

## DISCUSSION

*Appellant=s Written Statement*

In his third issue, appellant contends that the trial court erred by denying his motion to suppress his written statement relating that he stole and forged the deceased=s checks and that on the night of the fire he was at the deceased=s house and had a physical altercation with the deceased. This issue bears directly on appellant=s complaints regarding the sufficiency of the evidence to support his convictions and the trial court=s denial of his motion to suppress his oral statement. Accordingly, we will address his third issue at the outset. *See* Tex. R. App. P. 47.1.

Specifically, appellant contends that his written statement was inadmissible because he would not have given it but for his earlier oral statement. Assuming without deciding that appellant=s oral statement was inadmissible,[1] we disagree.

We review a trial court=s ruling on a motion to suppress for an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this review, we defer to the district court=s factual determinations but review de novo the court=s application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Appellant contends that his written statement should have been suppressed because it was tainted by his earlier oral statement. Relying on the Acat-out-of-the-bag@ theory, which has been severely limited in its application, *see Griffen v. State*, 765 S.W.2d 422, 431 (Tex. Crim. App. 1989),

---

[1] The trial court held that while Gilchest=s warnings to appellant did not comply with applicable constitutional standards, appellant=s oral statement that he was at the deceased=s house on the morning of the fire was admissible because appellant was not in custody at the time he made the statement.

appellant argues that because he thought his oral confession could be used against him, Ahis resolve to remain silent [was] broken, rendering any subsequent statements involuntary under the due process clause of the United States Constitution and Article 1 Section 9 of the Texas Constitution.@

Making a statement under circumstances that preclude its use does not perpetually disable the confessor from making a usable one after those circumstances have been removed. *Griffen*, 765 S.W.2d at 428 (citing *United States v. Bayer*, 331 U.S. 532, 541 (1947)). We assess the effect of giving a statutorily inadmissible statement on the voluntariness of a subsequent statement from the totality of the circumstances, with the State bearing the burden of proving voluntariness by a preponderance of the evidence. *Id.* at 429-30; *In re J.T.H.*, 779 S.W.2d 954, 958 (Tex. App.CAustin 1989, no writ). Those circumstances include the Alength of detention, incommunicado or prolonged detention, denying family access to a defendant, refusing a defendant=s request to telephone a lawyer or family, and physical brutality.@ *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985). None of these factors is present in this case.

The record reflects that appellant=s interrogation lasted around five hours; however, appellant does not contend and the record does not reflect that this period of time somehow rendered appellant=s written confession involuntary as a matter of law. Appellant was repeatedly offered and given beverages, as well as food. While he never requested access to an attorney, he was informed, both orally and in writing, of his right to do so. The record further reflects that Gilchrest informed appellant that he would be given an opportunity to contact his mother in light of the length of the interrogation:

[Detective] Gilchrest: Let=s take a break just a second.

**5**

[Agent] Roach:        You want another soda?

[Appellant]:        I still have a little bit.

[Detective] Gilchrest: Ethridge, we=re going to have to take a break. Let me take this opportunity to let you go to the bathroom and get you something else to drink.

[Appellant]:        Where do you stand in this proceeding time-wise?

[Detective] Gilchrest: Time-wise?

[Appellant]:        Yeah.

[Detective] Gilchrest: A lot of that just depends on where we go. If you want to call your mom andCin a little while, because if we get to going too longC

[Appellant]:        It=s just about 7:30. We=re still okay at this point.

Further, in addition to several express offers to take bathroom breaks, appellant was given an open ended offer to use the restroom at any time. After returning from a break early in the interrogation, the following exchange took place:

[Detective] Gilchrest: I feel much better now.

[Appellant]:        I=m not far away from [using the restroom] myself. That=s the way that (indistinguishable) is.

[Agent] Roach:        Oh, just holler. Holler whenever you need to.

Under the totality of the circumstances, the record supports the trial court=s subsequent ruling:

**6**

The written confession is admissible. The defendant was read his rights, the full rights, before giving the written statement after he was properly warned with the written statement. The, there is, there was some question I believe concerning, there=s a question concerning the totality of the circumstances test and the defendant believing that his prior statement would be used against him. I don=t know. There=s just some other notes that I=ve taken but it really doesn=t have anything to do with the holding. Has to do more with rationale. I do find that with all the warnings that he did receive, both the oral warnings and the written warnings, and the totality of the circumstances, the written statement was voluntary.

I do not find the defendant=s statements were the product of coercion. The written warnings cured the omission of the oral warning, or the one omission if there was an oral warning.

In the absence of specific evidence that the oral statement played an actual role in appellant=s decision to sign a written one, we cannot fault the trial court for its finding. *See Griffen*, 765 S.W.2d at 431; *see also Guardiola v. State*, 20 S.W.3d 216, 223-24 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).

Appellant does not dispute that the statutory requisites for the admission of the written statement were satisfied. *See* Tex. Code Crim. Proc. Ann. art. 38.22 ' 2(a) (West 1979). Instead, he contends that Gilchrest Aerroneously told Appellant that the written warnings basically consisted of the same, imperfect, warnings he had recited to Appellant earlier.@ However, appellant does not cite, and we are unaware of, authority for the proposition that such a statement renders statutorily adequate warnings on a written statement ineffective. Because a written statement is not Aobtained@ (because it is not admissible) until it is signed, giving the required warnings before the accused signs the statement meets the statutory requirements. *See Dowthitt v. State*, 931 S.W.2d 244, 259 (Tex. Crim. App. 1996).

Appellant further contends that because Gilchrest immediately reduced appellant=s oral statements to writing, there was Aa direct connection between the prior inadmissible statement and the subsequent written statement.@ However, the record reflects that appellant carefully read and edited his written statement, contemplated his choice of words, and changed his written statement to more accurately reflect his impression of the events in question.  In light of this period of time for reflection and the totality of the circumstances surrounding appellant=s written statement, including the unchallenged written warnings on that statement, we hold that whatever Adirect connection@ existed between his oral and written statement does not render the written statement inadmissible.

Finally, appellant refers to his testimony that Ahe would not have signed the written statement had he not made the exact same oral statements moments earlier . . . [and] had he known his earlier oral statement was not admissible because of the fatally defective statutory warning given to him.@  Because this resolution of the Aapplication of law to fact questions@ turns on an evaluation of appellant=s credibility and demeanor, we will defer to the trial court=s ruling.  *See Guzman*, 955 S.W.2d at 89.  The conflicts between appellant=s testimony at the suppression hearing and those portions of the record reflecting that he gave his written statement voluntarily were decided by the trial court in favor of the State.  The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Villarreal*, 935 S.W.2d at 138.  We hold that the trial court did not err in admitting appellant=s written statement into evidence.  Accordingly, appellant=s third issue is overruled.

In his harm analysis, appellant contends that his oral statements Ashowed that Appellant was capable of lying, and could easily have influenced the jury in its assessment of the

**8**

credibility of Appellant=s denial in his written statement that he was involved in any fashion in setting the fire which killed the deceased.@ Appellant contends that he was harmed by the admission of his written statement because it Ashowed that Appellant was capable of committing a crime of dishonesty and moral turpitude, and was the only evidence presented by the State which positively put him at the deceased=s house and in physical contact with the deceased on the morning of the fire.@ As appellant=s written statement was admissible, and the harm resulting from the written statement is the same as that resulting from his oral statement, we need not decide whether his identical oral statement was admissible.  *See* Tex. R. App. P.  44.2(b).[2]  Accordingly, his second issue is overruled.

### Hearsay Evidence

In his fourth issue, appellant contends that the trial court erred by admitting the hearsay testimony of Anthony Yates and Evelyn Whiteley.  Because this issue also bears directly on appellant=s sufficiency of the evidence complaints, we will address it prior to appellant=s first issue.

---

[2]  Appellant contends that the harm flowing from the admission of his oral and written statements should be analyzed pursuant to Rule of Appellate Procedure 44.2(a) because A*Miranda* warnings are of constitutional dimension, *Dickerson v. United States*, 530 U.S. 428, 147 L.Ed.2d 405 (2002), and the warnings required by Article 38.22 are likewise of constitutional dimension as they insure the effectuation of the federal and Texas guarantees to be free from compelled self-incrimination.@  Appellant does not dispute that the statutory requisites for the admission of his written statement were satisfied; accordingly, we review any theoretical resulting harm under Rule 44.2(b).

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Jackson v. State*, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979). An appellate court may reverse a trial court=s decision for an abuse of discretion only when it appears that the court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court=s conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *Dubose v. State*, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Even if the appellate court would have reached a different result, it should not intercede as long as the trial court=s ruling was within the Azone of reasonable disagreement.@ *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

Appellant objected to Yates=s and Whiteley=s testimony concerning their conversations with the deceased as hearsay. *See* Tex. R. Evid. 802. The State responded that the testimony was admissible as a hearsay exception under Rule 803(3), which allows admission of a statement of the declarant=s then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, or bodily health. *Id.* 803(3).

The record reflects that the trial court overruled appellant=s hearsay objection to Yates=s testimony about the deceased=s plans to evict appellant, change the locks on his house, and install deadbolts. The court further overruled appellant=s hearsay objection to Whiteley=s testimony that the deceased planned to pursue check charges against appellant and change the locks on his house, as well as the deceased=s Astate of mind about wanting to make sure the defendant was out of there before he filed [check forging charges] on him.@

Rule 803(3) clearly provides that testimony as to the deceased=s plan and then existing state of mind is admissible. *See id.* Because the complained of testimony concerns the deceased=s plans to evict appellant, change his locks, file charges against appellant, as well as his state of mind concerning when he would file charges against appellant, we cannot say that the court applied an erroneous legal standard or that no reasonable view of the record could support the trial court=s conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. Further, we cannot say that the court=s decision does not lie within the zone of reasonable disagreement. Accordingly, appellant=s fourth issue is overruled.

### *Sufficiency of the Evidence*

In his first issue, appellant challenges the legal and factual sufficiency of the evidence to support his convictions for arson and murder. Specifically, appellant contends that the evidence is legally and factually insufficient to Aestablish beyond a reasonable doubt the *corpus delecti* required in an arson prosecution, i.e., that the fire was set deliberately.@ Appellant=s argument assumes that his written statement was invalid and that the trial court erred by admitting Yates=s and Whiteley=s testimony. We have found that the statement was valid and that the trial court did not abuse its discretion in admitting Yates=s and Whitely=s testimony. In any event, we review the legal sufficiency of the evidence based upon the evidence admitted, even if on appeal we determine that the evidence is inadmissible. *Miles v. State*, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996).

Determining the legal and factual sufficiency of the evidence requires the implementation of separate and distinct legal standards. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). A legal sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

In determining the factual sufficiency of the elements of the offense, the reviewing court views all the evidence in a neutral light, without the prism of Ain the light most favorable to the prosecution.@ *Johnson*, 23 S.W.3d at 6-7. The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact. *Id*. In conducting its factual sufficiency review, an appellate court reviews the fact finder=s weighing of the evidence and is authorized to disagree with the fact finder=s determination. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). The court, however, does not substitute its judgment for that of the jury, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 129. Furthermore, the appellate court may not reverse a jury=s decision simply because it disagrees with the result. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

**12**

Viewing the evidence in the light most favorable to the verdicts, the record reflects that the jury could have concluded that appellant went to the deceased=s house at around 3:00 a.m. on the morning of the fire, struck the deceased in the face with a blunt instrument causing injuries severe enough to render him unconscious, turned on two of the gas burners on the stove in the deceased=s kitchen, and held an open flame causing the origin of the fire. The jury could have concluded further that appellant parked down the street from the deceased=s home and moved the deceased=s vehicle so that neighbors and firefighters would think the deceased was not at home. In light of the standards set out above, we cannot say that any rational trier of fact could not have found the essential elements of arson and murder beyond a reasonable doubt.

Further, after reviewing the evidence weighed by the jury that tends to prove that the fire was set deliberately and comparing it with the evidence that tends to disprove that fact, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The record does not reflect any evidence tending to disprove the fact that the fire was set deliberately; appellant=s expert witness testified that the cause of the fire was probably not a smoldering cigarette, but most likely an open flame. In light of appellant=s written statement and the testimony of Yates and Whiteley, the jury was free to consider appellant=s prior relationship with the deceased; the fact that when he went to the deceased=s home appellant parked down the street from the home rather than in the driveway or in front of the house; the fact that appellant moved the deceased=s truck out of his driveway so that it would not be seen and reveal the deceased=s presence at the house; the fact that appellant left Austin for Maryland later the same morning; and the fact that appellant lied to police about stealing and forging the deceased=s checks and being at the deceased=s home and having a

**13**

physical altercation with the deceased on the morning of the fire.  Because the record reflects both legally and factually sufficient evidence to support the jury=s verdicts, appellant=s first issue is overruled.

## *Motion for New Trial*

In his fifth and final issue, appellant contends that the trial court abused its discretion by denying his motion for new trial.  Specifically, appellant contends that he was entitled to a new trial because one of the jurors stated during deliberations that a statistical analysis demonstrated that the likelihood that the fire at the deceased=s home started accidentally was Aso slight as to be almost impossible.@

The grant or denial of a motion for new trial is committed to the sound discretion of the trial court.  *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  Abuse of discretion occurs when the trial court=s decision is arbitrary or unreasonable.  *State v. Read*, 965 S.W.2d 74, 77 (Tex. App.CAustin 1998, no pet.).  A trial court abuses its discretion Aonly when the . . . decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.@ *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  The question is Awhether the trial court acted without reference to any guiding rules or principles.@ *Montgomery*, 810 S.W.2d at 380.  We presume the correctness of the trial court=s ruling, and the burden rests on the appellant to establish the contrary.  *State v. Gill*, 967 S.W.2d 540, 541 (Tex. App.CAustin 1998, pet. ref=d).  The court=s decision will be sustained if it is correct on any theory of law applicable to the case.  *Read*, 965 S.W.2d at 77.

Appellant contends that he was entitled to a new trial because the juror=s statements regarding statistical analysis constituted receipt of other evidence during deliberations.  Texas Rule of

**14**

Evidence 606(b) limits those matters on which a juror may testify concerning deliberation to: A(1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.@ Tex. R. Evid. 606(b). Accordingly, we interpret appellant=s contention as complaining of outside influence.

Although case law has not specifically defined what constitutes Aoutside influence,@ it provides ample guidance as to what conduct is *not* considered an outside influence. *Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.CTexarkana 1999, pet. ref=d). Outside influences must originate from sources other than the jury itself. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370 (Tex. 2000). An outside influence is a force external to the jury and its deliberations, and it does not include any part of the jury=s mental process. *Wooten v. Southern Pac. Transp. Co.*, 928 S.W.2d 76, 78-79 (Tex. App.CHouston [14th Dist.] 1995, no writ). It Adoes not include information acquired by a juror and communicated to the others between the time the trial court instructs the jury and the time it renders a verdict, even when the information is not in evidence, and it is unknown to jurors before trial.@ *Crowson v. Kansas City S. Ry. Co.*, 11 S.W.3d 300, 305 (Tex. App.CEastland 1999, no pet.). Information gathered by one juror and related to the other jurors does not constitute outside influence, even if introduced specifically to prejudice the vote. *Soliz v. Saenz*, 779 S.W.2d 929, 932 (Tex. App.CCorpus Christi 1989, writ denied).

In this case, the juror=s claim that a statistical analysis revealed that the fire was not likely to have been accidental did not constitute an outside influence because it did not come from a source outside the jury, it involved the mental processes of a juror, and it did not emanate from outside the jury and its deliberations. In light of the standards set out above, we cannot say that the

**15**

trial court abused its discretion in denying appellant=s motion for new trial.  Accordingly, his fifth issue is overruled.

## CONCLUSION

**We overrule appellant=s issues.  Accordingly, the judgment of the trial court is affirmed.**

_____

**Marilyn Aboussie, Chief Justice**

**Before Chief Justice Aboussie, Justices Yeakel and Puryear**

**Affirmed**

**Filed:   August 30, 2002**

**Do Not Publish**

16