TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-01-00232-CR


NO. 03-01-00233-CR






William Ethridge Hill, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NOS. 0981472 & 0981493, HONORABLE BOB PERKINS, JUDGE PRESIDING







 We withdraw our opinion and judgment dated August 30, 2002, and substitute the
following opinion.

 Appellant William Ethridge Hill, Jr., brings this consolidated appeal from his
convictions for arson and murder. See Tex. Pen. Code Ann. §§ 19.02; 28.02 (West 1994 & Supp.
2002). In five issues, appellant contends that (1) the evidence is legally and factually insufficient
to support his convictions; (2) the trial court erred by admitting appellant's oral statement; (3) the
trial court erred by admitting appellant's written statement; (4) the trial court erred by admitting
hearsay evidence; and (5) the trial court abused its discretion by denying appellant's motion for new
trial. We will affirm the judgment of the trial court.

BACKGROUND

 In the early morning hours of October 2, 1997, the Austin Fire Department received
an alarm concerning a fire at the residence of William Allen. Allen's badly burned body was
discovered in the house, and the medical examiner determined that he had suffered a severe blow
to his face which rendered him unconscious before his death. The medical examiner concluded that
Allen died of smoke inhalation and ruled the case a homicide.

 Lieutenant Michael Crabill, an arson investigator, determined that the point of origin
of the fire was in the living room, in the southeast corner, in and around a reclining chair. He also
determined that the fire was started by an open flame. Further, firefighters noted that two gas
burners on the stove in the kitchen had been turned to the "on" position. Neighbors and firefighters
did not realize the deceased was in the burning house because his vehicle was not parked in his
driveway. In a statement to police, appellant later admitted that he moved the deceased's vehicle
down the street on the morning of the fire.

 Detective Mark Gilchrest of the Austin Police Department began an investigation and
discovered that the deceased had a roommate who had recently moved out of the house. Appellant
was identified as the roommate. Billy Gene Harris, a neighbor of the deceased, testified that at 3:00
a.m. on the morning of October 2, 1997, he saw a person matching appellant's description get out
of a car parked down the street from the deceased's house. Harris saw this individual walk toward
the deceased's house and return to his vehicle about twenty minutes later. Neighbors discovered the
fire coming out of the deceased's house at approximately 3:45 a.m.

 Detective Gilchrest met with some of appellant's acquaintances and learned that he
left Austin on the day of the fire to visit his mother in the Washington, D.C. area. As a result of his
investigation, Gilchrest also determined that appellant had recently stolen and forged several of the
deceased's checks and that the deceased had planned to file charges against appellant.

 On October 10, Gilchrest contacted appellant at his mother's home, asked him if he
planned to return to Austin, and told him that they needed to talk further. Gilchrest also made
arrangements to meet with FBI agent Ed Roach in Montgomery County, Maryland, to set up an
interview with appellant.

 On October 28, Roach and two officers from Maryland picked up appellant at his
mother's home. Appellant voluntarily accompanied them, and voluntarily met with Gilchrest and
Roach at the Montgomery County Police Department. Forty-five minutes after being placed in an
interview room, appellant was orally advised of his rights by Gilchrest. After three hours of
interrogation, Gilchrest informed appellant that he was under arrest for arson and murder. 
Thereafter, appellant admitted that he was present at Allen's house on the night he died. Appellant's
statements were then reduced to writing, with the written statement including Miranda warnings.

 After a suppression hearing, the district court did not file findings of fact or
conclusions of law; rather, the court stated its findings on the record. The district court determined
that, although the warnings given by Detective Gilchrest to appellant regarding his rights did not
comply with article 38.22, the portion of appellant's oral statement made before being told he was
under arrest was nonetheless admissible because appellant was not in custody at that time. See
generally Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979). However, the district court
suppressed that portion of the oral statement made after appellant was informed of his arrest because
the court already determined the inadequacy of the pre arrest oral warnings. Finally, after
determining the adequacy of the written Miranda warnings, the district court admitted appellant's
post arrest written statement.

 On February 7, 2001, the trial court rendered judgment on a jury verdict convicting
appellant of arson and murder. Appellant appeals the judgment.


DISCUSSION

Appellant's Statements

 In his second issue, appellant contends that the trial court erred by denying his motion
to suppress his oral statement made before being placed under arrest. In his third issue, appellant
contends that the trial court erred by denying his motion to suppress his written statement relating
that he stole and forged the deceased's checks and that on the night of the fire he was at the
deceased's house and had a physical altercation with the deceased. These issues bear directly on
appellant's complaints regarding the sufficiency of the evidence to support his convictions. 
Accordingly, they will be addressed at the outset. See Tex. R. App. P. 47.1.

 Appellant challenges the court's finding that he was not in custody during the
interview with Gilchrest and Roach before being arrested and that he was thus not entitled to the
protections of Miranda, embodied in article 38.22 of the Texas Code of Criminal Procedure. See
generally Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979); see also Miranda v. Arizona, 384 U.S.
436 (1966). We review de novo "mixed questions of law and fact" that do not turn on credibility and
demeanor. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (citing Villarreal v.
State, 935 S.W.2d 134, 139-41 (Tex. Crim. App. 1996) (McCormick, P.J. concurring)). We will
review de novo the district court's legal determination that appellant was not in custody at the time
of his pre arrest oral statements.

 "A person is in 'custody' only if, under the circumstances, a reasonable person would
believe that his freedom of movement was restrained to the degree associated with a formal arrest." 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California, 511
U.S. 318 (1994)). The reasonable person test demands that the custody determination be based
entirely upon objective circumstances. Dowthitt, 931 S.W.2d at 254. The court of criminal appeals
has identified at least four general situations that may constitute custody: (1) when the suspect is
physically deprived of his freedom of movement in any significant way; (2) when the suspect is told
by a law enforcement officer that he cannot leave; (3) when law enforcement officers create a
situation that would lead a reasonable person to believe that his freedom of movement has been
significantly restricted; and (4) when probable cause to arrest exists and law enforcement officers
do not tell the suspect that he is free to leave. Id. at 255. For the first three situations, the suspect's
freedom of movement must be restricted to the degree associated with an arrest, as opposed to an
investigative detention. Id. As for the fourth scenario, the subjective intent of law enforcement
officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested
to the suspect, and that manifestation, combined with the other objective circumstances, would lead
a reasonable person in the suspect's position to believe that he is under restraint to the degree
associated with an arrest. Id.

 After reviewing the record, we hold that appellant was not in custody at the time he 
made his pre arrest oral statements. Detective Gilchrest called appellant at his mother's home and
asked if he would talk to them. The police picked him up there, and he voluntarily accompanied the
police to the stationhouse. Appellant was not handcuffed during this time. He was never told he was
being placed into custody. Nor is there any indication appellant was not willing to accompany the
authorities or not willing to talk to them. There is no indication on the record that appellant wanted
to leave or tried to leave at the time he was making his oral statement. When a person voluntarily
accompanies officers to a location and he knows or should know that he is a suspect in the crime the
officers are investigating, the person is not in custody. Shiflet v. State, 732 S.W.2d 622, 628 (Tex.
Crim. App. 1985).

 Appellant focuses his argument primarily on the fourth Dowthitt scenario, arguing
that Gilchrest and Roach manifested probable cause by telling appellant that he was a suspect
without expressly informing appellant that he was free to leave. Our review of the record does not
convince us that the district court erred in determining that there was not a manifestation of probable
cause during the course of the interview prior to the arrest. See Roquemore v. State, 60 S.W.2d 862,
866 (Tex. Crim. App. 2001) ("In reviewing a motion to suppress, we give great deference to a trial
court's determination of historical facts.") (citing Guzman, 955 S.W.2d at 89). Appellant was merely
asked specific questions during a continuing investigation. Although appellant probably understood
he was a suspect, this is not itself determinative of the custody issue. See Rodriguez v. State, 939
S.W.2d 211, 216-17 (Tex. App.--Austin 1997, no pet.) ("Even a clear statement by an officer that
the person under interrogation is the prime suspect is not in itself dispositive of the custody issue,
for some suspects are free to come and go until the police decide to make an arrest."). A reasonable
person in appellant's position would not have believed he was restrained to the degree associated
with a formal arrest. Appellant was therefore not in custody when he made the pre arrest oral
statements. See Berkemer v. McCarty, 468 U.S. 420, 441-42 (1984) (holding that suspect not in
custody until formally arrested). Appellant's second issue is overruled.

 In his third issue, appellant contends that his written statement should have been
suppressed because it was tainted by his earlier oral statement. Relying on the "cat-out-of-the-bag"
theory, which has been severely limited in its application, see Griffin v. State, 765 S.W.2d 422, 431
(Tex. Crim. App. 1989), appellant argues that because he thought his oral confession could be used
against him, "his resolve to remain silent [was] broken, rendering any subsequent statements
involuntary under the due process clause of the United States Constitution and Article 1 Section 9
of the Texas Constitution."

 Making a statement under circumstances that preclude its use does not perpetually
disable the confessor from making a usable one after those circumstances have been removed. 
Griffen, 765 S.W.2d at 428 (citing United States v. Bayer, 331 U.S. 532, 541 (1947)). We assess the
effect of giving a statutorily inadmissible statement on the voluntariness of a subsequent statement
from the totality of the circumstances, with the State bearing the burden of proving voluntariness by
a preponderance of the evidence. Id. at 429-30; In re J.T.H., 779 S.W.2d 954, 958 (Tex.
App.--Austin 1989, no writ). Those circumstances include the "length of detention, incommunicado
or prolonged detention, denying family access to a defendant, refusing a defendant's request to
telephone a lawyer or family, and physical brutality." Armstrong v. State, 718 S.W.2d 686, 693
(Tex. Crim. App. 1985). None of these factors is present in this case.

 The record reflects that appellant's interrogation lasted around five hours; however,
appellant does not contend and the record does not reflect that this period of time somehow rendered
appellant's written confession involuntary as a matter of law. Appellant was repeatedly offered and
given beverages, as well as food. While he never requested access to an attorney, he was informed,
both orally and in writing, of his right to do so. The record further reflects that Gilchrest informed
appellant that he would be given an opportunity to contact his mother in light of the length of the
interrogation:


[Detective] Gilchrest: Let's take a break just a second.


[Agent] Roach: You want another soda?


[Appellant]: I still have a little bit.


[Detective] Gilchrest: Ethridge, we're going to have to take a break. Let me take
this opportunity to let you go to the bathroom and get you
something else to drink.


[Appellant]: Where do you stand in this proceeding time-wise?


[Detective] Gilchrest: Time-wise?


[Appellant]: Yeah.


[Detective] Gilchrest: A lot of that just depends on where we go. If you want to call
your mom and--in a little while, because if we get to going
too long--


[Appellant]: It's just about 7:30. We're still okay at this point.



Further, in addition to several express offers to take bathroom breaks, appellant was given an open
ended offer to use the restroom at any time. After returning from a break early in the interrogation,
the following exchange took place:


[Detective] Gilchrest: I feel much better now.


[Appellant]: I'm not far away from [using the restroom] myself. That's the
way that (indistinguishable) is.


[Agent] Roach: Oh, just holler. Holler whenever you need to.



Under the totality of the circumstances, the record supports the trial court's subsequent ruling:


 The written confession is admissible. The defendant was read his rights, the full
rights, before giving the written statement after he was properly warned with the
written statement. The, there is, there was some question I believe concerning,
there's a question concerning the totality of the circumstances test and the defendant
believing that his prior statement would be used against him. I don't know. There's
just some other notes that I've taken but it really doesn't have anything to do with the
holding. Has to do more with rationale. I do find that with all the warnings that he
did receive, both the oral warnings and the written warnings, and the totality of the
circumstances, the written statement was voluntary.


 I do not find the defendant's statements were the product of coercion. The
written warnings cured the omission of the oral warning, or the one omission if there
was an oral warning.



In the absence of specific evidence that the oral statement played an actual role in appellant's
decision to sign a written one, we cannot fault the trial court for its finding. See Griffen, 765 S.W.2d
at 431; see also Guardiola v. State, 20 S.W.3d 216, 223-24 (Tex. App.--Houston [14th Dist.] 2000,
pet. ref'd).

 Appellant does not dispute that the statutory requisites for the admission of the
written statement were satisfied. See Tex. Code Crim. Proc. Ann. art. 38.22 § 2(a) (West 1979).
Instead, he contends that Gilchrest "erroneously told Appellant that the written warnings basically
consisted of the same, imperfect, warnings he had recited to Appellant earlier." However, appellant
does not cite, and we are unaware of, authority for the proposition that such a statement renders
statutorily adequate warnings on a written statement ineffective. Because a written statement is not
"obtained" (because it is not admissible) until it is signed, giving the required warnings before the
accused signs the statement meets the statutory requirements. See Dowthitt v. State, 931 S.W.2d
244, 259 (Tex. Crim. App. 1996).

 Appellant further contends that because Gilchrest immediately reduced appellant's
oral statements to writing, there was "a direct connection between the prior inadmissible statement
and the subsequent written statement." However, the record reflects that appellant carefully read and
edited his written statement, contemplated his choice of words, and changed his written statement
to more accurately reflect his impression of the events in question. In light of this period of time for
reflection and the totality of the circumstances surrounding appellant's written statement, including
the unchallenged written warnings on that statement, we hold that whatever "direct connection"
existed between his oral and written statement does not render the written statement inadmissible.

 Finally, appellant refers to his testimony that "he would not have signed the written
statement had he not made the exact same oral statements moments earlier . . . [and] had he known
his earlier oral statement was not admissible because of the fatally defective statutory warning given
to him." Because this resolution of the "application of law to fact questions" turns on an evaluation
of appellant's credibility and demeanor, we will defer to the trial court's ruling. See Guzman, 955
S.W.2d at 89. The conflicts between appellant's testimony at the suppression hearing and those
portions of the record reflecting that he gave his written statement voluntarily were decided by the
trial court in favor of the State. The trial court is the sole judge of the credibility of the witnesses
and the weight to be given their testimony. Villarreal, 935 S.W.2d at 138. We hold that the trial
court did not err in admitting appellant's written statement into evidence. Accordingly, appellant's
third issue is overruled.


Hearsay Evidence

 In his fourth issue, appellant contends that the trial court erred by admitting the
hearsay testimony of Anthony Yates and Evelyn Whiteley. Because this issue also bears directly on
appellant's sufficiency of the evidence complaints, we will address it prior to appellant's first issue. 

 The admission or exclusion of evidence is a matter within the sound discretion of the
trial court. Jackson v. State, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979). An appellate court may
reverse a trial court's decision for an abuse of discretion only when it appears that the court applied
an erroneous legal standard, or when no reasonable view of the record could support the trial court's
conclusion under the correct law and the facts viewed in the light most favorable to its legal
conclusion. Dubose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Even if the appellate
court would have reached a different result, it should not intercede as long as the trial court's ruling
was within the "zone of reasonable disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991) (op. on reh'g).

 Appellant objected to Yates's and Whiteley's testimony concerning their
conversations with the deceased as hearsay. See Tex. R. Evid. 802. The State responded that the
testimony was admissible as a hearsay exception under Rule 803(3), which allows admission of a
statement of the declarant's then existing state of mind, emotion, sensation, or physical condition,
such as intent, plan, motive, design, mental feeling, pain, or bodily health. Id. 803(3).

 The record reflects that the trial court overruled appellant's hearsay objection to
Yates's testimony about the deceased's plans to evict appellant, change the locks on his house, and
install deadbolts. The court further overruled appellant's hearsay objection to Whiteley's testimony
that the deceased planned to pursue check charges against appellant and change the locks on his
house, as well as the deceased's "state of mind about wanting to make sure the defendant was out
of there before he filed [check forging charges] on him."

 Rule 803(3) clearly provides that testimony as to the deceased's plan and then
existing state of mind is admissible. See id. Because the complained of testimony concerns the
deceased's plans to evict appellant, change his locks, file charges against appellant, as well as his
state of mind concerning when he would file charges against appellant, it is relevant as probative of
a material issue. (1) Thus, we cannot say that the court applied an erroneous legal standard or that no
reasonable view of the record could support the trial court's conclusion under the correct law and
the facts viewed in the light most favorable to its legal conclusion. Further, we cannot say that the
court's decision does not lie within the zone of reasonable disagreement. Accordingly, appellant's
fourth issue is overruled.


Sufficiency of the Evidence

 In his first issue, appellant challenges the legal and factual sufficiency of the evidence
to support his convictions for arson and murder. Specifically, appellant contends that the evidence
is legally and factually insufficient to "establish beyond a reasonable doubt the corpus delecti
required in an arson prosecution, i.e., that the fire was set deliberately." Appellant's argument
assumes that his written statement was invalid and that the trial court erred by admitting Yates's and
Whiteley's testimony. We have found that the statement was valid and that the trial court did not
abuse its discretion in admitting Yates's and Whitely's testimony. In any event, we review the legal
sufficiency of the evidence based upon the evidence admitted, even if on appeal we determine that
the evidence is inadmissible. Miles v. State, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996).

 Determining the legal and factual sufficiency of the evidence requires the
implementation of separate and distinct legal standards. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). A legal sufficiency review calls upon the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). 
Any inconsistencies in the evidence should be resolved in favor of the verdict. Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and
circumstantial evidence. Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

 Viewing the evidence in the light most favorable to the verdicts, the record reflects
that the jury could have concluded that appellant went to the deceased's house at around 3:00 a.m.
on the morning of the fire, struck the deceased in the face with a blunt instrument causing injuries
severe enough to render him unconscious, turned on two of the gas burners on the stove in the
deceased's kitchen, and held an open flame causing the origin of the fire. The jury could have
concluded further that appellant parked down the street from the deceased's home and moved the
deceased's vehicle so that neighbors and firefighters would think the deceased was not at home. In
light of the standards set out above, we cannot say that any rational trier of fact could not have found
the essential elements of arson and murder beyond a reasonable doubt.

 In determining the factual sufficiency of the elements of the offense, the reviewing
court views all the evidence in a neutral light, without the prism of "in the light most favorable to
the prosecution." Johnson, 23 S.W.3d at 6-7. The court reviews all the evidence impartially,
comparing evidence weighed by the jury that tends to prove the existence of the elemental fact in
dispute with the evidence that tends to disprove that fact. Id. at 7. In conducting its factual
sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is
authorized to disagree with the fact finder's determination. Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996). However, it must be remembered that the trier of fact is the sole judge of
the weight and credibility of the testimony. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim.
App. 1997). The court, thus, does not substitute its judgment for that of the jury, and should set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Clewis, 922 S.W.2d at 129. Furthermore, the appellate court may not reverse a
jury's decision simply because it disagrees with the result. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).

 Appellant argues that the testimony given by his expert was such that the State's cases
for arson and murder must fail in a factual sufficiency analysis. However, the record does not reflect
any evidence tending to disprove the fact that the fire was set deliberately; appellant's expert witness
testified that the cause of the fire was probably not a smoldering cigarette, but most likely an open
flame. In light of appellant's written statement and the testimony of Yates and Whiteley, the jury
was free to consider appellant's prior relationship with the deceased; the fact that when he went to
the deceased's home appellant parked down the street from the home rather than in the driveway or
in front of the house; the fact that appellant moved the deceased's truck out of his driveway so that
it would not be seen and reveal the deceased's presence at the house; the fact that appellant left
Austin for Maryland later the same morning; and the fact that appellant lied to police about stealing
and forging the deceased's checks and being at the deceased's home and having a physical
altercation with the deceased on the morning of the fire.

 Appellant complains that, in order to find he deliberately started the fire, there must
be an impermissible stacking of inferences "unrelated to the physical evidence of the timing and
nature of the ignition of the fatal fire . . . ." In support of this proposition, appellant directs us only
to Tippit v. State, 41 S.W.3d 316, 327 (Tex. App.--Ft. Worth 2001, no pet.), which stated that
"when conducting a legal sufficiency review, a vital fact may not be established by stacking inference
upon inference." Without any authority, we are unwilling to agree with appellant that making factual
inferences based on circumstantial evidence "cannot be anymore permissible when reviewing the
factual sufficiency of the jury's verdicts." See Tex. R. App. P. 38.1(h).

 Thus, after examining all of the evidence impartially and giving deference to the
jury's verdict, we conclude that the jury's verdict is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the
evidence weighed by the jury that tends to prove that the fire was set deliberately and comparing it
with the evidence that tends to disprove that fact, we find it fails to show that the proof of appellant's
guilt is so obviously weak as to undermine confidence in the jury's determination, or that the proof
of guilt, although adequate if taken alone, is greatly outweighed by the contrary proof.

 Because the record reflects both legally and factually sufficient evidence to support
the jury's verdicts, appellant's first issue is overruled.


Motion for New Trial

 In his fifth and final issue, appellant contends that the trial court abused its discretion
by denying his motion for new trial. Specifically, appellant contends that he was entitled to a new
trial because one of the jurors stated during deliberations that a statistical analysis demonstrated that
the likelihood that the fire at the deceased's home started accidentally was "so slight as to be almost
impossible."

 The grant or denial of a motion for new trial is committed to the sound discretion of
the trial court. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Abuse of discretion occurs
when the trial court's decision is arbitrary or unreasonable. State v. Read, 965 S.W.2d 74, 77 (Tex.
App.--Austin 1998, no pet.). A trial court abuses its discretion "only when the . . . decision was so
clearly wrong as to lie outside that zone within which reasonable persons might disagree." Cantu
v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). The question is "whether the trial court acted
without reference to any guiding rules or principles." Montgomery, 810 S.W.2d at 380. We presume
the correctness of the trial court's ruling, and the burden rests on the appellant to establish the
contrary. State v. Gill, 967 S.W.2d 540, 541 (Tex. App.--Austin 1998, pet. ref'd). The court's
decision will be sustained if it is correct on any theory of law applicable to the case. Read, 965
S.W.2d at 77.

 Appellant contends that he was entitled to a new trial because the juror's statements
regarding statistical analysis constituted receipt of other evidence during deliberations. Texas Rule
of Evidence 606(b) limits those matters on which a juror may testify concerning deliberation to: "(1)
whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim
that the juror was not qualified to serve." Tex. R. Evid. 606(b). Accordingly, we interpret
appellant's contention as complaining of outside influence.

 Although case law has not specifically defined what constitutes "outside influence,"
it provides ample guidance as to what conduct is not considered an outside influence. Hines v. State,
3 S.W.3d 618, 623 (Tex. App.--Texarkana 1999, pet. ref'd). Outside influences must originate from
sources other than the jury itself. Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 370 (Tex.
2000). An outside influence is a force external to the jury and its deliberations, and it does not
include any part of the jury's mental process. Wooten v. Southern Pac. Transp. Co., 928 S.W.2d 76,
78-79 (Tex. App.--Houston [14th Dist.] 1995, no writ). It "does not include information acquired
by a juror and communicated to the others between the time the trial court instructs the jury and the
time it renders a verdict, even when the information is not in evidence, and it is unknown to jurors
before trial." Crowson v. Kansas City S. Ry. Co., 11 S.W.3d 300, 305 (Tex. App.--Eastland 1999,
no pet.). Information gathered by one juror and related to the other jurors does not constitute outside
influence, even if introduced specifically to prejudice the vote. Soliz v. Saenz, 779 S.W.2d 929, 932
(Tex. App.--Corpus Christi 1989, writ denied).

 In this case, the juror's claim that a statistical analysis revealed that the fire was not
likely to have been accidental did not constitute an outside influence because it did not come from
a source outside the jury, it involved the mental processes of a juror, and it did not emanate from
outside the jury and its deliberations. In light of the standards set out above, we cannot say that the
trial court abused its discretion in denying appellant's motion for new trial. Accordingly, his fifth
issue is overruled.


CONCLUSION

 We overrule appellant's issues. Accordingly, the judgment of the trial court is
affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

Affirmed

Filed: December 5, 2002

Do Not Publish

1. In his motion for rehearing, appellant argues that his objections to the testimony was based
partly on relevance grounds, that it "was not probative of any material issue in the cases . . .
regardless of whether it avoided exclusion as hearsay because it was a statement of existing mental
condition." While we find that the testimony was in fact probative to the extent required by rule
803(3), it remains unclear as to whether appellant also complains that the testimony was not relevant
pursuant to article IV of the rules of evidence. See Tex. R. Evid. 402. If article IV is at issue, we
note that neither appellant's brief nor his motion for rehearing cites us to that portion of the rules or
any caselaw discussing the law of relevancy. Thus, we will not further discuss it. See Tex. R. App.
P. 38.1(h).